## WALDON *v.* MARYLAND CASUALTY COMPANY *et al.; et vice versa.*

1. Where in a contractor's surety bond a limitation as to the time when suit may be brought on it provides, " that no claim, suit, or action by reason of any default shall be brought against the principal or surety after the 18th day of March, 1916; nor shall recovery be had for damages accruing after that date; that service of any writ or process commencing any such suit or action shall be made on or before such date," and where suit is brought before such date and process is attached, but service of the petition and process is made after such date by order of the court making a subsequent term of court the appearance term, such service relates to the time of filing the suit.

2. The surety on a contractor's bond, " indemnifying " the owner against failure of the principal to faithfully perform his building contract, was not released as such surety because the plaintiff failed to retain 15 per cent. of the contract price, under the facts of this case.

3. A provision in a contractor's suretyship bond, " that, in the event of any default on the part of the principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the surety by registered mail, at its office in the city of Baltimore, Maryland, promptly, and in any event within ten days after the obligee, or his representative, or the architect, if any, shall learn of such default," does not require giving notice to the surety of certain liens which have been filed in certain courts for the purpose of foreclosing such liens against the property of the owner. GILBERT, J., dissents.

4. In a suit in equity for breach of a contractor's bond, to which suit all persons interested are made parties, the plaintiff is not required to show, in order to recover such damages under the contract and bond, that he actually paid out money on claims prior to bringing such action to take up laborers' and materialmen's liens which were being foreclosed in other courts.

Nos. 3240, 3241. FEBRUARY 15, 1923. REHEARING DENIED MARCH 1, 1923.

Equitable petition. Before Judge Pendleton. Fulton superior court. February 8, 1922.

A. H. Waldon brought petition against the Maryland Casualty Company and others, and alleged substantially the following: On March 12, 1915, plaintiff entered into a contract with Mc-Daniel & Calmes, hereafter called the contractors, for the erection of a two-story brick veneer residence at number 143 Myrtle

street, Atlanta; a copy of which contract was attached to the petition and made a part thereof. The contract provided in substance as follows: (a) McDaniel & Calmes agreed to erect and complete a two-story residence according to certain plans and specifications, for the sum of $6,280. (b) Plaintiff agreed to pay McDaniel & Calmes the above sum as follows: 85 per cent. of all labor and material in the building to be paid for at the end of each week after the job was started; the remaining 15 per cent. to be paid when the job was completed according to the contract. (c) McDaniel & Calmes were to furnish plaintiff a satisfactory surety bond. In order to secure the performance of the terms of the contract the contractors as principal, and the Maryland Casualty Company as surety, executed and delivered to the plaintiff a surety bond in the sum of $3,150, conditioned that the contractors should faithfully perform their contract in the erection and completion of the residence according to the plans and specifications, which were made a part of the contract. A copy of the bond was attached to the petition. The contractors entered upon the work of the building of the residence, employing their agent, and making contracts for labor and material. From week to week as the work progressed payments of money were made by plaintiff in conformity with the requirements of the contract. Notwithstanding the contractors had received payment in full for the 85 per cent., as required under the contract, the house was not completed by them; and a number of persons having subcontracts under the contractors declined to proceed with the work, claiming that the contractors had failed and refused to pay them for the work already done, and the work on the building came practically to a standstill. Plaintiff promptly notified the contractors of the condition of affairs; and on July 21, 1915, he notified the surety of the failure of the contractors to complete the building according to the specifications, and afforded the surety ample opportunity to complete the building according to the specifications of the contract. On August 7, 1915, the surety company in writing waived their option to complete the contract, and authorized the plaintiff to do so with the 15 per cent. of the contract price left in his hands under the terms of the contract between the plaintiff and the contractors. Out of this reserve the plaintiff was compelled to furnish labor

and material with which to finish the residence at a cost of $194.91, or a total payment on the contract price of $5984.66. The 15 per cent. reserve amounted to $887.28, but plaintiff was compelled to expend $194.91 completing the residence with the permission of the surety company, which leaves a balance in his hands of $692.57. Thirteen materialmen and laborers herein named as defendants, whose claims aggregate $2,707.91, have filed their liens against the property. Of these Shannon & Murdock, Beck & Gregg Hardware Co., and R. O. Campbell Coal Co. have actually foreclosed their liens in the municipal court of Atlanta, and are attempting to enforce them against the property. The Carolina Portland Cement Co. and the Phœnix Planing Mill have filed suit in the city court of Atlanta, to foreclose their liens, in an attempt to enforce them against the property. R. O. Campbell Coal Co. has caused a summons of garnishment to be issued and served on plaintiff for the balance of the money in his hands, representing the balance of the contract price. The balance of the contract price in plaintiff's hands, together with the amount of liens already filed, exceeds the contract price by the sum of $1,015.34. Plaintiff has paid all of said contract price, with the exception of the sum of $692.57; which he prays leave to deposit in court for the purpose of allowing all valid liens to participate in the same. The contractors have violated their contract; the condition of the bond has been broken; and the contractors and the surety, are jointly and severally liable to plaintiff for the resulting injury and damage. Unless all parties at interest be brought into this suit and have their several claims herein adjudicated in accordance with equitable rules, a multiplicity of suits and a circuity of actions will ensue, to the irreparable injury of plaintiff. The subcontractors, materialmen, and laborers named as defendants will foreclose their liens against the property belonging to plaintiff, and will prosecute numerous suits against him for the enforcement of the claims. None of the claims are valid and enforceable liens against his property; for the entire contract price, with the exception of the $692.57 which is herein tendered, has been paid for account of labor and material used in the work, or, if otherwise, such claims as might be found to be valid liens against the property would be entitled to participate in the amount herein

deposited, or any such other balance as might be found to be due. Such subcontractors and materialmen would also have a cause of action against the contractors for any unpaid balance. Plaintiff would be entitled to maintain this cause against the contractors and the surety on their bond, in any sum which might be required to pay the contractors on account of their claims. The equitable jurisdiction of this court is essential to the ascertainment and enforcement of the rights of the parties. The prayers were, that the materialmen and laborers be enjoined from instituting any suit against plaintiff or the house and lot, on account of any claim arising out of or founded upon the contract for the erection of the house, or for labor and material furnished therefor, and that they be required to set up in this case any cause of action they may respectively have as against plaintiff or this property; that those who have heretofore filed such suits be enjoined from prosecuting them; that in the event plaintiff shall be found indebted in any amount on account of work done under this contract, he be allowed to pay such sum into court, and the same be distributed under order of the court to the persons entitled thereto under their respective liens and claims; that judgment be rendered against the contractors and the surety, for the expenditures incurred and the damages suffered by plaintiff by reason of the breach of the conditions of the bond; that all of the rights of all of the parties respecting the subject-matter be considered and adjudicated in this case, and their respective rights enforced by proper order and decree; and for general relief.

Service of a copy of the petition and of the order thereon by the trial judge was effected on G. G. Calmes and upon the other defendants named in the petition, with the exception of H. L. McDaniel, as to whom the sheriff made a return of non est inventus. McDaniel & Calmes made no appearance by plea, answer, or otherwise. On January 6, 1916, the sheriff made a return of service on the Maryland Casualty Co., by serving Leonard Haas, as agent, with a copy of the petition, process, and order. On March 21, the Maryland Casualty Co. filed a traverse of this return of service; and on March 30, 1916, the plaintiff filed an amendment to his petition, making the case returnable to the May term, 1916, and an order was accordingly passed by the

court, making the case returnable to that term. On March 30, 1916, the sheriff made an entry showing that service had been made upon the Maryland Casualty Co., by serving D. J. McIntyre, its agent, with a copy of the petition and process. On April 19, 1916, that company filed a demurrer to the petition, on the ground that it set forth no cause of action against the defendant. The court, on June 2, 1916, overruled this demurrer and the company filed its exceptions pendente lite. On May 17, 1916, the company filed its answer, admitting the execution of the bond, denying the material allegations of the petition, and denying that there is any liability arising out of the bond, by reason of the following provisions contained therein: " Provided, however, that this bond is executed upon the following express conditions, the performance of each of which shall be condition precedent to any right of recovery hereon, anything in the contract to the contrary notwithstanding. . . 2. That no claim, suit, or action by reason of any default shall be brought against the principal or surety after the 18th day of March, 1916, nor shall recovery be had for damages accruing after that date; that service of writ or process commencing any such suit or action shall be made on or before such date; that the principal shall be made a party to any such suit or action, and be served with process commencing the same, if the principal with reasonable diligence can be found; that no judgment shall be rendered against the surety in excess of the penalty of this instrument."

The surety company in its answer averred that while this suit was brought prior to March 18, 1916, process was not issued thereon and served on this defendant until March 30, 1916; and that by reason of the failure on the part of plaintiff to serve this defendant with process on or before that date, there can be no recovery on the bond. An amendment was filed by the surety company on April 4, 1917, which was allowed by the auditor to whom the case was referred. This amendment averred that the defendant had been released and discharged as surety on the bond, because the contract between McDaniel & Calmes and the plaintiff provided that the contract price was to be paid to the contractors as follows: " 85 per cent. of all labor and material in the building to be paid at the end of each week, after the job is started, and the remaining 15 per cent. to be paid when

the job is completed according to agreement." It was also averred that the plaintiff did not pay the contractors in accordance with the terms of the contract, but paid them sums in excess of what was therein provided, and failed to retain in his hands the 15 per cent. stipulated in the contract; and that the plaintiff in making payments to the contractors failed to take from them a sworn statement as required by section 3352 of the Civil Code of Georgia of 1910; and that plaintiff failed to notify the surety company of the filing of the suits by Shannon & Murdock et al., or any of them, that the surety company had no knowledge or notice of the bringing of the suits, and that judgments were taken in these cases without any defense having been made and without any notice to this defendant; that plaintiff had a good and valid defense to the actions, in that the amount paid out on the contract price, together with the total amount of liens filed for labor and material going into the building, exceeded the contract price, and notwithstanding these facts the plaintiff failed to file such defense and allowed judgments to be taken against him, and was guilty of gross negligence in failing to give the surety company an opportunity to defend and defeat the claims. By another amendment allowed by the auditor on April 20, 1917, the surety company averred: "The original contract price was $6,280; under the provisions of the plans and specifications the owner was allowed to deduct from this amount $280 for face brick and $80 for hardware, leaving the net contract price $5,916.25; that this was the amount that should have been paid to the contractors in the event they properly performed their contract and fully paid all claims for labor and material; that under the terms of the contract the owner was required to retain 15 per cent. of the contract price until the said contract was fully completed; that 15 per cent. of the contract price amounted to $887.78, and that deducting the said sum from the contract price leaves a balance of $5027.94. Deducting this amount from the sums which the owner was compelled to pay out in order to complete the building, viz., $194.91, leaves the sum of $4,833.06 as the net amount which the owner should have paid the contractors during the progress of the work. The owner, Waldon, actually paid to the contractors during the progress of the work the sum of $5,425, which was an overpayment to the

contractors to the extent of $951.95, or more than 12 per cent. of the original contract price; and that said overpayment was in violation of the above contract and the bond executed in this case, and was a material change in the nature and terms of the contract, and injured this defendant and increased its risk, by reason of which it has been discharged as surety."

On April 15, 1917, an amendment to the petition was allowed, alleging that the plaintiff had paid for labor and material used in the building, on the contract price, the sum of $5,915.25. On April 20, 1917, the plaintiff filed a demurrer to the amended answer of the surety company, on the grounds, that it set forth no valid defense; and that it failed to allege what amount was paid by the plaintiff to the contractors over and above 85 per cent.; that the contract shows that, in so far as the defendant surety company was concerned, plaintiff was only required to retain ten per cent. of the contract price; that there was no legal obligation on the part of the plaintiff to obtain affidavits of the contractors; that there was no duty on the part of the plaintiff to notify the defendant of the pendency of any suit; and that the amendment fails to allege any valid defense to the liens, or that the plaintiff knew of the defense at the time the suits were filed.

The auditor filed his report on January 4, 1918, awarding judgment in favor of the plaintiff against McDaniel & Calmes as principal, and the Maryland Casualty Co. as surety; the judgment inuring to the benefit of certain named defendants. Exceptions to the auditor's report having been filed, as to findings on questions both of fact and of law, the case was re-referred to the auditor, who filed an amendment to his report on April 6, 1918. On the hearing of the exceptions of the surety company to the auditor's report as amended on May 7, 1920, the trial judge re-committed the case to the auditor, who thereafter, on June 6, 1920, filed a supplemental report, to which the surety company, on November 24, 1920, filed its exceptions, and also a motion to recommit the case. On the hearing of the exceptions on February 22, 1922, the trial judge sustained the exceptions in so far as the auditor ruled that the surety company had not been released and discharged by the failure of the plaintiff to give the notice required by the bond; and in so far as he ruled the notice actually

given did comply with the provisions of the bond, and in so far as he ruled that the plaintiff was not required, under the terms of the contract or the bond, to show that he had actually paid out the sums the recovery of which is sought in this case, prior to the bringing of the present suit. The exceptions were over-ruled by the trial judge in so far as the auditor ruled that the contract and bond did not require petitioner to retain in his hands 15 per cent. of the contract price, but required the owner simply not to pay to the contractor in excess of 85 per cent. of the value of the labor and material put into the building. Judg-ment was rendered by the court in favor of the Maryland Cas-ualty Co., and against the plaintiff, and a final decree was entered accordingly. To this ruling the plaintiff excepted. The Maryland Casualty Co. filed a cross-bill of exceptions.

*Jones, Evins & Moore* and *W. A. Sutherland,* for plaintiff.

*Leonard Haas, Brandon & Hynds, Robert Strickland, V. B. Moore, R. Low Reynolds, Dorsey, Shelton & Dorsey, Horton Brothers, E. A. Neely,* and *Powers & Castleton,* for defendants.

HILL, J. (After stating the foregoing facts.)

1. We will first consider the assignments of error in the cross-bill of exceptions. The first of these assignments of error is to the overruling of the demurrer filed by the Maryland Casualty Company, on the gound that the petition did not set out a cause of action against that company. It is insisted that the bond sued on provided that in case of suit service of process should be made on or before the 18th day of March, 1916, and that the record shows that such service was not had until the 30th day of March, 1916. It appears from the record that the suit was filed before the 18th day of March, 1916, but that service was not perfected on the defendant on or before that date. It appears that on March 24, 1916, the surety company filed a traverse of the return of service which was made upon the attorney of the defendant in error instead of upon its agent residing within the jurisdiction of the court in the City of Atlanta. It also appears that immediately after the traverse of the return of service on March 30, 1916, the plaintiff obtained an order of court making the case returnable to the next succeeding May term of court, and providing for proper service upon the surety company. It also appears from the record that service was perfected on the surety

company before the May term of court, by serving its agent residing within the City of Atlanta, in Fulton County, Georgia, and who had a place of business therein, within the time required. The question, therefore, to be determined is whether under these circumstances the service upon the agent of the defendant after the 18th day of March, 1916, but before the next May term of court succeeding such service, is sufficient. Under the Civil Code, § 5551, the filing of the suit in the office of the clerk of the superior court is considered the time of the commencement of the suit. The suit was filed and process attached before the expiration of the time limit stated in the contract. Under these circumstances the service in the case will be held to relate to the filing of the suit; otherwise the provision of the contract requiring both the suit to be filed and the process to be served before the date named in the contract would be an unreasonable provision, and would put it within the power of the officers, whose duty it is to serve the process in time, and over whom the plaintiff has no control, to prevent a recovery, although the suit might be well brought and in time, but service of the process delayed beyond the time stated in the bond, by the officers themselves. Therefore we are of the opinion that the trial judge properly retained jurisdiction of the case, holding in effect that everything pertaining to the service of the petition and process on the defendant related to the time of the filing of the suit, which was brought in time, and had process attached. See, in this connection, *Nicholas* v. *British America Assurance Co.,* 109 *Ga.* 621, 624 (34 S. E. 1004). In that case no process was attached; and it was said that "where there is no process nor any waiver, there can be no amendment; and where there is an entire absence of process, another original process can not be substituted." And see *Cox* v. *Strickland,* 120 *Ga.* 104 (7, 8), 113 (47 S. E. 912, 1 Ann. Cas. 870), where it was held: "The filing of the petition is treated as the commencement of the suit only when followed by due and legal service. But if the plaintiff is active in his efforts to remedy the nonfeasance of officers, and endeavors to have process issued and service made, the jurisdiction of the court continues, to cure the defective process, and to have service perfected, even after the first term." In rendering the opinion of the court Mr. Justice Lamar said: "In a case against several

defendants it is often impossible to serve each in time for the appearance term. The right to amend and to grant continuances reasonably necessary to bring in those who have not been served would seem to be one of the inherent powers of the court which had authority in the first instance to issue the process. . . But where the plaintiff, on discovery of the failure to serve, or of irregularity in process, is active to have the fault cured, the court is not without jurisdiction to make the suit effective."

2. Exceptions to the auditor's report were overruled in so far as he ruled that the Maryland Casualty Co. had not been released and discharged from liability by reason of the failure of the petitioner to retain in his hands 15 per cent. of the contract price; and that the contract and bond did not require petitioner to retain in his hands 15 per cent. of the contract price, but required the owner simply not to pay to the contractor in excess of 85 per cent. of the value of labor and material put into the building. The grounds of exception by the surety company are, among others, that the contract and bond sued upon required the plaintiff to retain in his hands 15 per cent. of the contract price; and that, the auditor having found as a matter of fact that petitioner had failed to retain in his hands 15 per cent. of the contract price, the law and the evidence demanded a ruling that the surety company had been discharged by reason of such failure on the part of petitioner to comply with the contract and bond. We are of the opinion that these exceptions are without merit. We think that the meaning of the contract in this respect is, that the plaintiff was not required to retain 15 per cent. of the contract price for the protection of the surety, but that the requirement for the payment of 85 per cent. was for labor and material, and under the language of the contract the owner of the building was not required to retain the 15 per cent. of the contract price; and we are therefore of the opinion that the contract does not require that 15 per cent. of the contract price of the building should be retained until the building was completed. The contract expressly provides that " 85 per cent. of all labor and material in the building shall be paid at the end of each week after the job is started;" and we are of the opinion that the surety company was not released from the obligation of its bond because the plaintiff failed to retain 15 per cent. of the contract

price. That language in the contract, without more, would not require the plaintiff to retain 15 per cent. of the contract price until the building was completed. Under that language more than 85 per cent. of the contract price might be paid before the building was completed, if the contractor had expended more than the contract price called for in labor and material. See Howard County *v.* Baker, 119 Mo. 397 (24 S. W. 200) ; Southern Real Estate &c. Co. *v.* Bankers Surety Co., 276 Mo. 183 (207 S. W. 506, 510) ; Welsh *v.* Warren (Tex. Civ. App.), 159 S. W. 106. The language of the contract immediately following that above quoted, viz., " and the remaining 15 per cent. to be paid when the job is completed according to agreement," does not change the case, and require the plaintiff to retain 15 per cent. of the contract price. Evidently the contract entered into between the plaintiff and the defendant was on the assumption that the labor and material which were to go into the building of the house would cost less than the contract price, and that 15 per cent. of the value of labor and material would pay for all those things necessary to complete the building, and that there would be some money left in the hands of the owner for the contractor. But there is no express provision made in the contract itself for the retention of this overplus, if any. It is evident that the parties to the contract thought that there might be a surplus, but there is no express provision or agreement or necessary implication to warrant us in holding that the plaintiff should retain in his hands 15 per cent. of the contract price of the building. Having held, as above, that the contract did not require the plaintiff to retain in his hands 15 per cent. of the contract price, we are of the opinion that his failure to do so would not prevent his recovery simply because he had retained less than 10 per cent. of the contract price; and therefore the court below did not err in overruling the exceptions to the auditor's report in this respect.

3. There are only two questions of law involved in the main bill of exceptions, to wit: First. Was the Maryland Casualty Co., the surety on the contractors' bond, released by the failure to give proper notice under the bond? Second. Was the plaintiff required to show that he actually paid out the money sought to be recovered, prior to bringing the action? Exceptions of law were filed to the auditor's report, because the auditor found

as a matter of law that the conduct of the plaintiff in failing to notify the surety company of the pending suits to foreclose liens on the property, and in failing to defend said suits, did not change the nature and terms of the contract, and did not injure the defendant and did not increase its risk as surety and expose it to greater liability, and thereby discharge it as surety on the bond. These exceptions to the auditor's·report were sustained by the trial judge, in so far as the auditor ruled that the surety company had not been released and discharged by the failure of the petitioner to give the notice required by the bond; and in so far as he ruled that the notice actually given did comply with the provisions of the bond. The first paragraph of the bond sued on provides: " that, in the event of any default on the part of the principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the surety by registered mail," etc. There is no contention here but that the plaintiff did notify the surety company that the contractor had failed to comply with his contract in not completing the house according to the plans and specifications. In fact the record discloses that, in reply to such notice given, the surety company acknowledged receipt of it and authorized the plaintiff to have the contract completed, thus waiving the right, which it had under the contract, to complete the building. But it is insisted that the plaintiff should have gone further and notified the defendant of the filing of the liens in the municipal and city courts of Atlanta, and of the foreclosure suits in such courts, and of the further fact that judgments were taken in some if not all of such foreclosure suits. It is argued, that under the above clause of the contract the plaintiff was required to do so; that inasmuch as such notice was not given, the surety was deprived of any opportunity of defending the suits, and that consequently judgments were taken in all of those cases without any notice to the surety company whatever; and therefore that, under the provisions of the bond above quoted, notice of such facts to the defendant was required, and the plaintiff having failed to give such notice, the surety company was released and discharged from any obligation it might otherwise owe to the plaintiff under the surety bond. The court below held, in accordance with this view, that the surety company had been discharged by the failure

of the plaintiff to give the notice required by the bond. We are of the opinion that the court erred in so holding. The language of the bond in this regard is clear and unequivocal, and it clearly does not contemplate that there shall be any notice given by the obligee in the bond in addition to the notice that is expressly required to be given, viz., that there has been default on the part of the principal and the particular facts showing such default, etc. Nor is there anything in the language of the bond to indicate any intention on the part of the surety to require additional information as to damages arising from foreclosure of laborer's liens, etc., against the owner's property. Notice of default of the contractor was given, and when that was done the obligee had done all that was required of him under the terms of the bond. This was sufficient to put the surety company on notice to look out and to protect its own interest, and to determine what damages had arisen from the default on the part of the contractor. It would have been an easy matter for the bond to have expressed the necessity for such additional notice, but it did not do so; and we are clearly of the opinion that the plaintiff gave the surety company all the notice that he was required to give under the terms of the bond. It would be a strained construction to hold that the language of the bond contemplated that additional notice of damages should be given, so as to include damages arising out of claims of every lienor who had such claim and who was proceeding to foreclose the lien. The language of the bond clearly refers only to notice of the failure of the contractor to complete the building in accordance with the plans and specifications. This view is strengthened by the clause of the bond immediately following the above, which provides that " the surety shall have the right, within thirty days after the receipt of such statement, to proceed or procure others to proceed with the performance of the contract."

4. The auditor ruled that plaintiff was not required, under the terms of the contract as evidenced by the bond, to show that he had actually paid out the sums of money which he is seeking to recover, prior to the beginning of the present action. The exception to this ruling of the auditor was sustained by the trial court, and the plaintiff excepted on the ground that it was not incumbent upon him to actually pay out the sums, the recovery

of which is sought, prior to the bringing of the action, and therefore the plaintiff insists that the report of the auditor should have been sustained and a decree entered accordingly; and we are of the opinion that this is the correct view. It must be remembered that this is a suit in equity, where the plaintiff seeks to bring the defendant surety company and all the other lienors and defendants into court, without waiting the final judgment upon all of the materialmen's and laborers' liens which had been filed against the property of the plaintiff.

In the case of *Massachusetts Bonding & Ins. Co.* v. *Realty Trust Co.*, 137 *Ga.* 693 (73 S. E. 1053), s. c. 139 *Ga.* 180 (77 S. E. 86), s. c. 142 *Ga.* 499 (83 S. E. 210), it was held that the surety company and the lienors could be brought into one equitable action in order to settle all the rights involved, without first paying off liens then outstanding and then bringing suit against the surety company. The defendant, however, insists that there is a distinction between that and the present case; and it is argued that there the bond guaranteed *faithful performance*, while in the present case the condition of the bond is "that if the principal shall indemnify the obligee against any loss or damage arising by reason of the failure of the principal to faithfully perform said contract, then this obligation shall be void, otherwise of full force and effect." The defendant insists that the bond in the present case does not guarantee *faithful performance*, but is an obligation to compensate the obligee for any *loss* or *damage* which he may sustain *after the money is actually paid out* by him; and the defendant relies on the case of *McGarry* v. *Seiz*, 129 *Ga.* 296 (58 S. E. 856), s. c. 136 *Ga.* 849 (72 S. E. 243), as supporting this contention. In the *Seiz* case the bond provided: "The surety shall not be liable under this bond to any except the obligee; but it is agreed that the obligee, in estimating his damage, may include the claims of mechanics and materialmen, arising out of the performance of the contract, and paid by him, only when the same, by the statutes of the State where the contract is to be performed, are valid liens against the property." That case is clearly distinguishable from the present case, because in the *Seiz* case it is expressly provided in the bond that certain claims may be included only when they have been paid; but the ruling in that case is not applicable in a case

where the language of the contract is that the principal and surety shall " indemnify " the obligee against " *loss* or *damage* directly arising by reason of the failure of the principal to faithfully perform his contract." It is true that the word " indemnify " as used in the bond may extend to a case of making good loss or damage after it has actually occurred, and that the obligee should be compensated for loss or damage after he had actually paid the money for such loss; but we are of the opinion that such was not in contemplation of the parties to the present contract. The word " indemnify " also means to save harmless; to secure against loss or damage, etc. Webster's New International Dictionary. And according to the same authority the word " indemnity " means " protection or exemption from loss or damage past or to come " etc. So, giving to the bond the construction which we do, we think it was the purpose of the parties to it to give the obligee protection against loss or damage, and when lienors had filed their claims in other courts, some of whom had obtained judgments, and the contractors had defaulted in their contract, that the plaintiff could bring them all into a court of equity and have all matters settled there by a proper decree of the court.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur, except*

GILBERT, J., dissenting. McDaniel & Calmes contracted to build for A. H. Waldon a residence for the lump sum of $6280. A bonding company contracted to indemnify Waldon on that contract. The bond was conditioned on the faithful performance of the contract on the part of McDaniel & Calmes. The contractors were to pay in full for all labor and material. They failed to complete their contract. The indemnity bond in terms provided, that, " in the event of any default on the part of the principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the surety." In addition to failing to complete the building, the contractors failed to pay in full for labor and material. This failure to pay for labor and material resulted in laborers' and materialmen's liens and judgments against the owner; and these were very important facts which should have been communicated to the surety, without notice of which the surety could not protect itself by seeing that the liens and judgments were justified under the facts and

were based upon bona fide claims. They definitely increased the risk of the surety. The owner failed to notify the surety of the particular facts of the default of the contractors. The surety was merely notified to the effect that the contractors had failed to complete the building. Under these conditions, and under proper construction of the contract of suretyship, the owner failed to comply with his duty in regard to notice, and the surety company should be relieved of liability for liens and judgments of which they had no notice. This dissent from the third headnote is based on these reasons.