29354. LIBERTY MUTUAL INSURANCE COMPANY *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

DECIDED MARCH 7, 1942. REHEARING DENIED MARCH 27, 1942.

*Bussey & Fulcher,* for plaintiff in error.
*Abrahams, Bouhan, Atkinson & Lawrence,* contra.

STEPHENS, P. J. The Atlantic Coast Line Railroad Company brought suit against the Liberty Mutual Insurance Company. The petition alleged that in May, 1938, and until April, 1939, the State Highway Department, through H. G. Smith as contractor, was engaged in constructing "an overpass" over the tracks and rights of way, at Central Junction in Chatham County on State highway No. 80 leading from Atlanta to Savannah, of the Seaboard Air Line Railway Company, the Central of Georgia Railway Company, and the plaintiff; that in such contract Smith gave to the plaintiff a public liability insurance policy with the defendant company, conditioned to protect the plaintiff "harmless from all claims for damages against" the plaintiff "arising by reason of said construction

work;" that the policy, which was attached to the petition, provided as follows: the defendant "does hereby agree with the assured [the plaintiff] to pay on behalf of the assured all claims for damages, for which the assured is legally liable, arising from bodily injury (including death at any time resulting therefrom) accidentally suffered or alleged to have been suffered by any person during the policy period by reason of the prosecution of the work described in item 3 of the declarations by H. G. Smith, contractor, his agents or employees or subcontractors. . . To defend in the name of and on behalf of the assured any suit brought against the assured seeking damages on account of such bodily injury or death even if such suit is groundless, false or fraudulent," that the policy covered, item 3 of the declarations "that all work let or sublet in connection with construction of road approaches and bridge, Chatham County, Georgia, project WPGH 103-A;" that the policy was in force and effect on the dates hereinafter alleged; that Smith employed as a watchman on this work a man named Lonnie Preston Bryant; that about midnight April 3, 1939, while Bryant was so employed by Smith, Bryant was found dead beside the railroad tracks of the plaintiff by an employee of Smith who came to relieve Bryant; that the body of Bryant was found a distance of about seventy-five feet south of the crossing; that Bryant came to his death by violent and accidental means and was at the time of his death in the performance of work connected with the construction of the overpass; that the defendant was immediately notified thereof and made an investigation, and defended a claim brought by the alleged dependents of the deceased under the compensation law; that on May 8, 1939, the plaintiff wrote a letter to the defendant giving it notice of the accident and this letter was acknowledged by the defendant on May 10 with the following statement: "We are conducting an investigation of this case, with reservation of all the rights under our policy contract with you. When that investigation is completed we will get in touch with you;" that on June 13, 1939, the defendant wrote to the plaintiff in part as follows: "We have conducted an investigation of this accident, and as a result, wish to advise that your policy of insurance with this company . . does not extend our protection for the accident or claim. Therefore, we will not defend any action which may be instituted against you, or pay any damages or judgment that may be awarded against you on account of this accident, or pay any

expenses that you may incur in any manner on account of this accident or claim or litigation resulting therefrom;" that on August 19, 1939, Maudie Lee Bryant as the widow of the deceased watchman brought suit against the plaintiff claiming $20,000 damages for the homicide of Bryant; that upon receipt of the papers the plaintiff gave the defendant notice thereof and vouched it into court to defend the suit; that the defendant again disclaimed liability and refused to defend the suit as it was bound to do under this policy of insurance; that the defendant having disclaimed liability the plaintiff undertook to defend the suit through its attorneys, Abrahams, Bouhan, Atkinson & Lawrence of Savannah, who are employed by the plaintiff on an annual retainer; that these attorneys prepared the defense of the case and obtained its dismissal on general demurrer by the trial judge on December 19, 1939; that Maudie Lee Bryant excepted to the Court of Appeals; that the plaintiff's lawyers prepared briefs and argued the case before the Court of Appeals in Atlanta; that the Court of Appeals reversed the lower court on its judgment on the demurrer and the case was remanded to the trial court; that the case was set for trial before a jury on October 23, 1940, and the plaintiff made all the preparation as to law and evidence necessary for the trial and defense of the case, and that the case was reached for trial on October 24, and consumed two full days, and on the afternoon of October 25, 1940, after all the evidence had been submitted, the legal counsel for Maudie Lee Bryant announced to the court that he was unable to produce sufficient evidence to make a case showing the plaintiff negligent, and then and there dismissed the case; that on November 1, 1940, the plaintiff addressed a letter to the defendant requesting payment of reasonable attorney's fees and expenses in connection with the trial; that the defendant replied to this letter and denied liability, as follows: "We have your letter of November 1, 1940, advising of the outcome of this trial and advising that you were of the opinion that under our contract involved we would be responsible to the railroad company for the expenses incurred in the trial of the case as well as the attorney's fee. In our opinion we have no policy of insurance with the Atlantic Coast Line Railroad which extends coverage for this suit. We wish to reaffirm the position taken in our previous letters to the Atlantic Coast Line Railroad dated June 13, 1939, and September 2, 1939, which position remains unchanged;" that under

the Georgia law Maudie Lee Bryant had six months within which to rebring the suit; that six months have expired and the case is now barred by the statute of limitations; that thereafter at the expiration of the period of limitation the plaintiff again wrote to the defendant, and in its letter requested copies of the policy involved herein, to which letter the defendant replied as follows: "With further reference to your letter of April 25, 1941, I am advised by my home office that they are not willing to furnish copies of the requested policy and endorsements;" that notwithstanding the terms and provisions of the insurance contract the defendant has obstinately refused to assume any liability, and such refusal has continued for more than sixty days after demand was made therefor, and such refusal has been in bad faith; that while the plaintiff's attorneys are retained on an annual fee, if the defendant had lived up to its responsibility under the insurance contract it would have been required to employ attorneys to defend the suit and to pay them a reasonable fee; that in the employment of the plaintiff's counsel by the plaintiff it is not contemplated that such counsel should perform legal services for others, or perform free legal services where other persons are responsible for attorney's fees; that the defendant is liable for reasonable attorney's fees for the defense of the Maudie Lee Bryant case; that reasonable attorney's fees for the services rendered by the plaintiff's attorneys in the Maudie Lee Bryant case would be $500; that the expenses of the plaintiff incurred in the trial of such case amounted to $288.70, and in addition thereto the plaintiff has paid $7.35 for having a photostatic copy of the policy made, the defendant having refused to furnish the plaintiff with a printed copy thereof; that the plaintiff has been put to much inconvenience and trouble by the defendant in this matter and asks for 25 per cent. damages against the defendant as provided in the Code, § 56-706, and in addition thereto asks that the court, under the provisions of such Code section, award its attorneys for bringing and prosecuting this suit the sum of $150. The plaintiff prayed for judgment for $1145.05, the total of the several sums. In addition to the provisions of the policy quoted in the petition it appeared from the copy of the policy attached as an exhibit that the defendant agreed to pay "in addition to damages, all costs taxed against the assured in any legal proceeding defended by the company . . all expenses incurred by it for . . de-

fense," and also that the company agreed "to pay irrespective of the limit of liability stated in the policy, all costs, all premiums on attachment and appeal bonds, taxed against the assured or required in any such proceedings, all expenses incurred by the company."

The defendant demurred generally to the petition on the ground that no cause of action was alleged, and because it appeared from the petition and exhibits that the expenses for which recovery was sought were incurred by the plaintiff in the defense of a suit expressly excluded from the coverage afforded by the policy sued on; and also on the ground that it appeared from the allegations of the petition in the case of Maudie Lee Bryant against the plaintiff, a copy of which was attached to the present petition, that the death of Bryant occurred as a result of bodily injuries such as were expressly excluded from the protection afforded by the policy. The defendant demurred specially to various paragraphs of the petition. The defendant also demurred to that part of the petition that sought to recover of it $500 as attorneys' fees and $7.35 as costs for making a photostatic copy of the policy, for the reasons that the allegations thereof showed that no right of recovery existed in the plaintiff for the attorneys' fees claimed; that the plaintiff has suffered no pecuniary loss by reason of its defense of the suit for which it can seek indemnity from this defendant, and because the plaintiff can not recover such fee for the use of its attorneys since they are not entitled to receive such fee from the plaintiff, and the plaintiff can not retain such fee for itself; and because the expense incurred by the plaintiff for a photostatic copy of the policy upon which this defendant is sued is not a lawful item of recovery. The defendant further demurred to the allegations of the petition seeking to recover damages and attorneys' fees under Code § 56-706 on the ground that there was no allegation which met the requirements of that section.

The judge overruled the demurrers, and the defendant excepted.

Counsel for the insurance company state that under the pleadings and facts three important issues are presented for determination by this court: (1) Is the accident which resulted in the death of Lonnie Preston Bryant covered by the policy of insurance, which is the basis of this suit? (2) Can the plaintiff recover either for itself or for the use of its annually retained coun-

sel a reasonable attorneys' fee for defending the suit brought against it by Maudie Lee Bryant as the widow of the deceased to recover for his homicide? (3) Is the plaintiff entitled to sue for the penalties provided by Code § 56-706? Counsel for the railroad assent to the foregoing statement of the questions involved.

1.  By the rider endorsed on the policy it appears that the defendant obligated itself to pay in behalf of the assured, the plaintiff, "all claims for damages . . arising from bodily injury . . including death . . accidentally suffered . . by reason of the prosecution of the work [all work in connection with the construction of a certain described overpass bridge and the road approaches thereto] . . by H. G. Smith, contractor, his agents, employees or subcontractors;" and also agreed that it would "defend in the name of and on behalf of the assured any suit brought against the assured seeking damages on account of such bodily injury or death even if such suit is groundless, false or fraudulent." Among the "exceptions" embodied in the policy is the following: "Said agreement as respects protection afforded by virtue of this coverage rider shall not apply to . . (D) liability for bodily injuries or damage to property (1) caused by any employee of the assured."

It appears from the allegations of the petition that Bryant, the deceased, was employed as a crossing watchman by the contractor, Smith; that the overpass bridge was being constructed over several railroad tracks, including the tracks of the plaintiff; that about midnight April 3, 1939, while the deceased was so employed by the contractor, he was found dead beside the tracks of the plaintiff, and that the widow of the deceased brought a suit for damages against the plaintiff to recover for the death of her husband, in which she alleged that her husband's death was the result of the negligence of the employees of the plaintiff in the operation of one of its trains. It is this suit that the plaintiff contends the defendant should have defended, pursuant to the obligation imposed on it under the policy sued on. The suit brought by the widow of Bryant did not terminate in her favor, but finally resulted in a voluntary dismissal by the plaintiff therein, and it appears that more than six months elapsed between such dismissal and the filing of the present suit, and it also appears that any right of action which the widow of Bryant might have had for his homicide by the al-

leged negligence of the employees of the plaintiff is now barred by the statute of limitations.

It is urged by the defendant that it was not called on, under the terms of the policy, to defend the suit by Mrs. Bryant against the plaintiff, because it was not a suit for a bodily injury such as it had obligated itself to defend for the plaintiff. It bases this contention on the exception contained in the policy and which is quoted above to the effect that the protection offered by the coverage rider endorsed on the policy "shall not apply to : . liability for bodily injuries . . caused by any employee of the assured." In making this contention counsel for the insurance company necessarily assumed that Bryant was killed as the result of the negligence of an employee of the railroad. In fact it is stated in their brief that counsel for the railroad will not deny such assertion. They were mistaken in making this statement. Counsel for the railroad do deny that Bryant was so killed.

Irrespective of whether or not the insurance company would not be liable if it appeared that the death of Bryant was caused by an employee of the railroad company, under the exception contained in the policy to the effect that the protection offered thereby did not extend to bodily injuries or death caused by an employee of the assured, it does not appear as a matter of law that Bryant's death was so caused. In the suit instituted by Maudie Lee Bryant against the railroad company to recover for Bryant's death there was no adjudication that Bryant's death was caused by an employee of the assured. The Bryant suit was voluntarily dismissed by the plaintiff therein, and there was no admission by the railroad company in the pleadings of that case that Bryant met his death as the result of the running of its switch engine and cars. Bryant was found dead by or near the tracks of the railroad some time after this train had passed along this portion of the track, and under circumstances which indicated that he had been struck by something, possibly by a train. However, Bryant was on duty as a watchman at a crossing where there were several railroad tracks, including main-line tracks of other railroads. Therefore the Bryant suit did not as a matter of law establish that Bryant's death was caused by an employee of the railroad company. The claim of the insurance company that the present suit was therefore subject to demurrer because Bryant's death was caused by an employee of the railroad company and was therefore within the exception con-

tained in the policy, conceding that this exception would in such a case relieve the insurance company from liability here, is without merit.

2. It is the opinion of the court that under the policy sued on the defendant was obligated to defend any action brought against the plaintiff for damages on account of bodily injury resulting in death alleged to have been accidentally suffered by reason of the prosecution of the work of the contractor Smith, in the construction of the described overpass bridge and road approaches thereto, "even if such suit is groundless, false or fraudulent," and that the insurance company, by refusing to undertake the defense of such action, breached the contract of insurance and is liable to the railroad company for all damages resulting to it as a direct result of such refusal and breach. Bryant, at the time of his death, was engaged by Smith, the contractor, as a watchman at the crossing at which the work was being performed. Bryant suffered death by reason of the prosecution of the work. In such a case the plaintiff would be entitled to recover of the defendant for violating the terms of the policy by refusing to perform the obligations undertaken therein. The plaintiff would be entitled to recover, for a breach of contract, the damages contemplated by the parties. See Code, § 20-1407. It was not necessary for the plaintiff to show that it had paid out any moneys as the result of the failure of the defendant to perform the obligations imposed on it by the contract of insurance, in order to maintain a suit for damages on account of a breach of such contract. See *Waldon* v. *Maryland Casualty Co.,* 155 *Ga.* 76 (4) 88 (116 S. E. 828). The contract created by the policy was not one of indemnity, but was one wherein the defendant agreed to do certain things, which included the defense of any suit brought against the plaintiff seeking damages on account of an accidental death suffered by any person during the policy period by reason of the prosecution of certain work, consisting of the construction of an overpass bridge and road approaches by one H. G. Smith, contractor, no matter how groundless the suit might be. By the contract the defendant agreed to pay all expenses incurred by the railroad in defending any such suit brought against it, even though the suit were groundless. The defendant having failed to defend such suit the plaintiff was forced to defend it. The plaintiff employed counsel for this purpose. The contract contemplated this in

the event of its breach. The plaintiff retained counsel by the year to represent it generally in all legal matters. Counsel for the plaintiff, in defending the suit against it, notwithstanding they were employed by the year, were being compensated by the plaintiff for their services in the particular suit. Counsel represented the railroad in defense of a suit against it, the defense of which another had contracted for a consideration to undertake, and the plaintiff, if entitled to recover on the policy, would be entitled to recover for such services a reasonable fee. The defendant, in its contract of insurance, agreed "to defend in the name of and on behalf of" the railroad company any suit, etc. The contract contemplated that the insurance company would employ counsel in conducting the defense of any suit which it was obligated to defend "in the name of and on behalf of" the railroad. The plaintiff only had to show that this expense had been incurred, for as we have seen the contract of insurance sued on was not one of indemnity but one whereby the company agreed to defend such a suit and obligated itself so to do. See *Stokes* v. *Robertson*, 143 *Ga.* 721, 722 (85 S. E. 895); *Detrick* v. *Trust Co. of Ga.*, 49 *Ga. App.* 587, 589 (176 S. E. 686).

3. The pleadings made a case for submission to a jury whether the defendant was liable for the damages and attorneys' fees provided for under Code § 56-706. It does not appear as a matter of law that a jury could not find that there was such an unfounded refusal in law or in fact to comply with the provisions of the policy imposing an obligation on the defendant to defend the lawsuit involved as to take this question away from the jury. See *Cotton States Life Insurance Co.* v. *Edwards*, 74 *Ga.* 220, 221 (4); *Travelers Insurance Co.* v. *Sheppard*, 85 *Ga.* 751 (12 S. E. 18); *Life & Casualty Co.* v. *Smith*, 51 *Ga. App.* 122 (179 S. E. 744). The questions of law made in this case were not of such a character as would, as a matter of law, acquit the defendant of bad faith in refusing to undertake to perform the obligations assumed by it under the contract of insurance sued on. Bad faith is usually a jury question. *Ætna Life Insurance Co.* v. *Stewart*, 49 *Ga. App.* 786 (5) (176 S. E. 777).

The allegations relative to a demand for performance and refusal thereof and as to waiting sixty days before bringing the present suit were plainly averred. The petition was not subject to demurrer on the ground that it appeared as a matter of law that the plaintiff was not entitled to recover the statutory penalties provided for in

Code § 56-706. *North British &c. Insurance Co.* v. *Parnell*, 53 *Ga. App.* 178 (185 S. E. 122) ; *Commercial Casualty Insurance Co.* v. *Campbell*, 54 *Ga. App.* 530 (188 S. E. 362).

4. Applying the foregoing rulings, the trial court properly overruled the demurrer. *Judgment affirmed. Sutton, J., concurs.*

FELTON, J., concurring specially. The main insurance policy was issued to H. G. Smith, contractor, to cover liabilities stated therein. At the top of the first page of the policy appears the following statement: "This policy provides protection against liability only with respect to hazards described in the coverage riders attached." In the main policy H. G. Smith is always referred to as "the assured." In the printed rider attached the name of the assured is stated as Atlantic Coast Line Railroad Company. Item 5 of the rider is partly printed and partly typewritten. The printed part is as follows: "The assured is the owner or contractor by whom the operations described in item 3 are to be let or sublet. And it is agreed that all such operations shall be undertaken by and under contract or contracts with and wholly at the risk of independent contractors." The typewritten part is as follows: "Assured is neither owner nor contractor." The coverage rider (printed) is as follows: "The public liability policy of which this coverage rider and the declarations on the reverse side hereof are made a part provides protection in accordance with the provisions, conditions and limitations of said policy, but subject to the exceptions hereinafter stated, with respect to such accidents, (a) caused by the conduct of the work described in the declarations let or sublet by the assured to independent contractors or independent subcontractors; or (b) caused by the existence, location or condition of materials and equipment used by any such independent contractor or independent subcontractor in the conduct of the work described in the said declarations, or delivered for use of any such independent contractor or independent subcontractor at any location where such work or any work incidental thereto is being conducted.

"Exceptions to this agreement. Said agreement as respects protection afforded by virtue of this coverage rider shall not apply to (A) liability for damage to property unless a premium charge therefor is made in said declarations, (B) liability for bodily injuries unless a premium charge therefor is made in said declarations, (C) liability of any nature assumed by the assured by any oral or written contract, nor (D) liability for bodily injuries or

damage to property, (1) caused by any employee of the assured, or (2) caused by any accident occurring after final completion, at the place of occurrence of such accident, of the work let or sublet by the assured; or (3) caused (a) by or during the exercise by the assured of supervision or control over the work covered by this policy, or (b) by reason of materials or equipment ·furnished by the assured to be used in connection with said work, unless the assured carries workmen's-compensation and public-liability insurance on said work with this company, or unless such supervision, control or furnishing of materials or equipment is disclosed in said declarations.

"Premium. The premium is based upon the total cost of all work described in said declarations performed during the policy period for the assured by all independent contractors and independent subcontractors, including the cost of all labor, material used or delivered for use, allowances, bonuses and commissions paid or due. If the premium computed on the entire cost of such work, so performed, exceeds the estimated premium set forth in said declarations, the assured shall immediately pay to the company the additional premium earned. If such entire cost is less than the sum so set forth the company shall return the unearned premium when determined. The assured shall, at the end of the policy period, whenever requested by the company, furnish the company with a written statement showing the total cost of all work described in said declarations, performed under contract during the whole or any part of the policy period, and the company shall be permitted at any reasonable time to examine the books and records of the assured as respects the cost of such work. The rendering of any statement by the assured or the payment of premium thereon shall not bar examination of the assured's books and records by the company at any time within one year after expiration of said policy nor the company's right to any additional premium earned."

There appears the following typewritten railroad protective public liability endorsement: "It is agreed that paragraph (a) personal injuries under section 1, payment of loss, of the public liability policy of which this endorsement is issued to form a part, is expunged and the following substituted therefor: 1. To pay on behalf of the assured all claims for damages, for which the assured is legally liable, arising from bodily injury (including death at any

time resulting therefrom) accidentally suffered or alleged to have been suffered by any person during the policy period, by reason of the prosecution of the work described in item 3 of the declarations by H. G. Smith, contractor, his agents, employees or subcontractors, or by reason of the existence of materials intended for such work placed upon the premises in item 3 of the declarations, or lawfully maintained upon the ways adjacent thereto; 2. (a) To defend in the name of and behalf of the assured any suit brought against the assured, seeking damages on account of such bodily injury or death, even if such suit is groundless, false or fraudulent; (b) To pay, irrespective of the limit of liability stated in the policy, all costs, all premiums on attachment and appeal bonds, taxed against the assured or required in such proceedings, all expense incurred by the company and all interest accruing after the entry of judgment upon such part thereof as shall not be in excess of the limit of the company's liability, until the company has paid, tendered, or deposited in court the amount of such judgment or such part thereof as does not exceed the limit of the company's liability, as expressed in the policy. It is further understood and agreed that when railroad employees are assigned or loaned to the person, firm or corporation described in paragraph 1 above, to perform work in connection with the operations covered by this policy which is not in any way connected with the movement of trains of the railroad, or is not done under the direct control of the railroad, and if such railroad employees are subject to the direction and control of such person, firm or corporation in all matters pertaining to their work and are included on the pay rolls of such person, firm or corporation, then for the purposes of this insurance such employees shall be regarded as employees of such person, firm or corporation."

It will be noted that the policy and the printed rider were intended to be used in connection with a policy issued to a builder or contractor, and were not intended to apply to an insured such as the railroad is in this case. In that event the typewritten rider is the only contract with the railroad, and it clearly covers accidents due to the negligence of the employees of the railroad. Assuming that the exceptions in the printed rider apply to the railroad as "the assured," the typewritten coverage is in conflict, if not simply making the whole contract as to the railroad ambiguous, the con-

struction is demanded under applicable rules of law which are too well known to be discussed that the contract covers the negligence of the employees of the railroad. Any other construction would mean that the contract so far as indemnity to the railroad was concerned was an idle gesture, and the payment of a premium by the contractor was for a blank piece of paper.