24734, 24741. NORTH BRITISH AND MERCANTILE INSURANCE COMPANY *v.* PARNELL; and *vice versa.*

DECIDED MARCH 31, 1936.

*L. A. Peacock, Bennet & Peacock,* for plaintiff in error.

*E. L. Smith,* contra.

MACINTYRE, J. On December 18, 1933, Mrs. David I. Parnell instituted this action in the city court of Albany against North

British and Mercantile Insurance Company. The action was founded on a contract of fire insurance upon a certain house in the principal amount of $2000, issued originally by the defendant to the estate of Mrs. Celem Crawford in August, 1932, and by proper endorsement transferred to the plaintiff on January 18, 1933. The plaintiff's petition alleged the destruction of the property insured by fire, sometime during 1933, and prayed for a judgment in the sum of $2000, plus a penalty of 25%, plus interest and attorney's fees. The defendant filed demurrers, both general and special, and an answer.

After denying the material allegations of the petition, the answer set out the following reasons why the plaintiff should not prevail: (1) That the contract of insurance sued on, originally issued by the defendant to the estate of Mrs. Celem Crawford, recited that "this insurance is effective subject to the following conditions and those printed on the third page of this policy and are hereby made warranties by the assured and are accepted as a part of this contract;" that among the "conditions . . on the third page," of the contract were the following: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto shall be void . . if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple . . or if any change, other than by the death of an insured, takes place in the interest, title or possession of the subject of the insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise," and that this condition of the policy, was breached as follows: On September 6, 1932, after the will of Mrs. Celem Crawford had been duly probated, and after Mrs. David I. Parnell (the plaintiff) and C. I. Parnell had duly qualified as executors under said will, they did, pursuant to the powers granted them under said will as executors, and individually, execute and deliver to S. B. Lippett as trustee a security deed, conveying the property covered by the contract of insurance to secure certain named indebtedness of Mrs. Celem Crawford; this security deed being duly witnessed and recorded on September 12, 1933, and being still outstanding at the time the property insured was destroyed by fire. (2) That the contract of insurance contained the further condition on page

3 as follows: "The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company, *and subscribe the same;*" that on January 8, 1933, the policy was actually and properly endorsed to Mrs. David I. Parnell so that Mrs. Parnell was the person named as the assured in the policy at the time the property insured was destroyed by fire; that under this provision she was required by the defendant to submit to examination and she did actually appear and submit to examination under oath, but after the questions were put to her and her answers were correctly transcribed and after she had read them and admitted their correctness, she failed and refused to subscribe the same and continuously refused to do so. The plaintiff amended her petition, admitting the giving of the security deed but further alleged that no forfeiture of the policy should result for the reason that at the time the policy was endorsed to the plaintiff she notified the defendant, by notifying its agent who issued said policy, P. M. Lancaster, Sylvester, Ga. of the fact that said security deed had been executed, etc.

■ The plaintiff's petition as amended alleged that: "After making proof of loss and filing same with the defendant on or about April 25, 1933, as set forth in paragraph 3 of plaintiff's amendment, plaintiff thereafter on July 5, 1933, made demand in writing upon the defendant for settlement by registered United States mail. . . Although such demand was made upon defendant more than sixty days before the filing of plaintiff's original petition, the defendant refused and failed to pay plaintiff the amount due upon said insurance policy, all without reason or excuse, and the defendant's refusal to pay is frivolous and without any excuse or reason and was, therefore, in 'bad faith,' making the defendant liable for said penalty of 25% as attorney's fees." The defendant filed a special demurrer to this paragraph which was in substance that the allegations were "mere conclusions of the pleader without any facts alleged to sustain the same."

We do not question the principle that *mere* conclusions of law and conclusions of fact, have no place in good pleading. It is true, however, that in presenting a complaint to a court a petitioner must make use of *legitimate* conclusions of fact and general conclusions of law. A petition is the specification in methodical and legal

form of the circumstances constituting the plaintiff's cause of action, and in stating these circumstances it is not sufficient to state *mere* conclusions of law, nor to state the result of facts arising from circumstances not set forth therein. In considering whether or not a particular allegation in a petition is subject to a special demurrer attacking it as a conclusion of the pleader, it is permissible and proper for the court to consider in connection therewith all other facts alleged in the petition. *Western & Atlantic R. Co.* v. *Roberts,* 144 *Ga.* 250 (86 S. E. 933); *Lemon* v. *Lemon,* 141 *Ga.* 448 (81 S. E. 118). Our statute provides that if the refusal of an insurance company to pay a claim under its policy within sixty days after demand is in *"bad faith"* it shall be liable for a 25% penalty, plus reasonable attorney's fees. "Bad faith" in refusing to pay the claim within sixty days after demand is a fact to be proved in order to recover this penalty and attorney's fees. In a suit on a fire-insurance contract, if definite facts are well pleaded which in law make a case of liability against the insurer and disclose a duty to pay the damage, by allegations of compliance with preliminary requirements such as furnishing a proof of loss to the insurer, and if it is further alleged that on timely demand by the insured the insurer within sixty days thereafter refused to compensate for the loss sustained, the pleader may allege that the refusal was in "bad faith," and that the defendant is therefore subject to a penalty provided by law, without subjecting this allegation to the complaint, by special demurrer, that it is a *mere* conclusion of the pleader. The main objection of counsel to this paragraph is that it is not alleged that the insurer gave *no* reason, and, if so, what reason it did give in refusing to pay the claim. However, we must ask, does not an allegation that insured refused to pay the claim "all without reason or excuse," when tested by the rule of reasonable construction, allege with sufficient definiteness that in refusing the claim it gave no excuse or reason, and is this not true even when construed most strongly against the pleader? To us the answer seems inevitable. See in this connection *Louisville & Nashville R. Co.* v. *Watts,* 20 *Ga. App.* 637 (93 S. E. 255); *Charleston & W. C. Ry. Co.* v. *Attaway,* 7 *Ga. App.* 231 (66 S. E. 548); *Busbee* v. *Marshall,* 3 *Ga. App.* 764 (60 S. E. 376); *Cedartown Cotton & Export Co.* v. *Miles,* 2 *Ga. App.* 79 (58 S. E. 289); *A. C. L. R. Co.* v. *Davis & Brandon,* 5 *Ga. App.* 214 (62 S. E. 1022). How-

ever, if we be wrong in this, and it be true that petitioner does not allege that insurer gave *no* reason for refusing to pay the claim, under the ruling we have already made (the petition showing a compliance by the plaintiff with the provisions of the policy and consequent liability and duty of the insurer to pay the loss and its refusal to pay), yet we think that whether there was any reason given, or whether there were other insinuating facts in connection with the refusal, is purely a matter of evidence tending to support the ultimate issue of fact as to "bad faith," and need not be pleaded. We are not to be construed as holding that if the petition should *affirmatively* show (which is not true here) that a reason was given by the insurer, that the defendant could not call for that reason by special demurrer. The allegation following that of "bad faith," that "making the defendant liable for said penalty of 25% as attorney's fees" is an allegation of *legal result* which will be judicially recognized by this court as arising from the allegation of refusal in "bad faith," and, as such, is not objectionable. See in this connection *Jefferson Fire Ins. Co.* v. *Brackin,* 147 *Ga.* 47 (92 S. E. 930); *U. S. Fidelity & Guaranty Co.* v. *Corbett,* 35 *Ga. App.* 606 (3) (134 S. E. 336). The records in those cases, of file in the clerk's office, disclose almost identical allegations of "bad faith." This ruling is not in conflict with *Chance* v. *Commercial Credit Co.,* 30 *Ga. App.* 543 (118 S. E. 465); for that decision merely decided that, the "*averments of liability for attorney's fees as a part of the expense of the instant litigation* (italics ours) are but conclusions." There the legal result pleaded did not follow upon the averment of fact.

■ The policy sued on was in the principal sum of $2000, and the plaintiff's suit as originally brought alleged that the property destroyed was "of the value of considerably more than $2000" and "thereby the defendant became indebted to your petitioner in the full sum of $2000." The plaintiff amended her petition and alleged that the value of the property destroyed was $1000. It has already been pointed out that the defendant filed a general denial, and pleaded specially (1) existence of a security deed on the property in violation of the terms of the contract (this defense was admitted by the plaintiff, by amendment and alleged notice on the part of the insurance company of its existence), and (2) the failure of the plaintiff, in violation of the terms of the policy, to

subscribe to the answer made by her to questions propounded by counsel for the insurer. The jury returned a verdict in the principal sum of $1400. It is prayed by the defendant in one of the grounds of the motion for new trial, that said verdict be set aside and a new trial be granted on the specific ground that the verdict, under the facts appearing in said record, was arrived at by way of compromise. Counsel for the defendant is careful to point out to us that his contention is not that the verdict was for a less amount than the evidence authorized, which he frankly admits, under the decisions, is not a good ground for complaint by a defendant, but his real contention is that *there is no real verdict at all* in that it was a compromise verdict to which some of the jurors did not conscientiously agree, as is required of a legal verdict. It was pertinently said in Simmons *v.* Fish, 210 Mass. 563 (97 N. E. 102, Ann. Cas. 1912D, 588) : "It is urged that this was a compromise verdict, for certain jurors must have conceded their conscientious belief that the plaintiff ought to prevail, to the end that agreement might be reached. In order to pass upon the soundness of this argument it becomes necessary to inquire what a compromise verdict is, and to ascertain whether this was such a verdict." A compromise verdict is well defined in 27 R. C. L. 850, as follows : "A verdict which is reached only by the surrender of conscientious convictions on one material issue by some jurors in return for a relinquishment of matters in their like-settled opinion on another issue, and the result is one which does not award the approval of the entire panel, is a compromise verdict." Counsel has cited many cases to sustain his contention that the verdict being for a less amount than $2000 must of necessity be a compromise. Not to our conviction. In *Reeves* v. *State, 2 Ga. App.* 414 (58 S. E. 548), Judge Powell said: "The verdict was manifestly a compromise. Such compromise, whereby the jurors give up their deliberate convictions and honest differences over the question of the defendant's guilt of the only crime in issue under the testimony, and compromise by convicting him of another offense of which he is manifestly not guilty is unlawful: is unfair to the State, and unfair to the accused." However, this language of Judge Powell was correct because *there was no evidence* to support the verdict rendered, as he specifically pointed out. So also was the effect of the decision of *Milner* v. *Tyler, 9 Ga. App.* 659 (71 S. E. 1123).

*Peavy* v. *Clemenls,* 10 *Ga. App.* 507 (73 S. E. 756), and *Alabama Great Southern Railroad Co.* v. *Daffron,* 136 *Ga.* 555 (71 S. E. 799, Ann. Cas. 1912D, 438), were cases involving a charge of the court which instructed, or tended to instruct, the jury by intimation that they might compromise their convictions in order to reach an agreement. No charge of the court is here being considered, and there was evidence to support the finding made by the jury. It is quite true that there was no contest or issue raised in this case that the property was destroyed, yet there was an issue to be found by the jury as to the value of the property destroyed, and although all the *opinionative* evidence as to its value might have been $2000 or above, there was no admission by defendant of the value. In its answer it denied the value of the property and there was no agreement between the parties that the value was of $2000, so as to make the amount liquidated. It is true that the jury were not to consider the amount of recovery until they had found the defendant liable, yet the principal amount of the policy, $2000, did not necessarily or legally flow from the determination that the plaintiff had established his cause of action. The jury had a description of the property, it must be assumed to have been made up of intelligent, experienced men; the question before them was not one that required the judgment of an expert, and they were at liberty, and it was their duty, to use their intelligence and experience in judging whether the plaintiff's testimony and the testimony of the other witnesses, which after all were simply their *opinions* as to the value of the property described to them, were correct, and from it all arrive at a conclusion as to what ought to be paid for the plaintiff's loss. The fact that none of the witnesses testified of a less value than $2000 and that the jury found $1400 might offer grounds for a surmise that it was a compromise verdict, but is it not just as reasonable to infer that it was a compromise as to the amount and not as to the liability? If this be true, most verdicts for damages become compromises, but that is not a reason for setting them aside. Hamilton *v.* Owego Water Works, 22 App. Div. 573 (48 N. Y. Supp. 106). From the cases we have examined, both in this State and in other jurisdictions, it would seem that a *verdict* is to be set aside as a compromise only when (however, we do not hold this to be exhaustive of all cases) (1) there is no theory of the evidence admitted before the jury that will

support the verdict rendered, that is, where there is no evidence to support the verdict; (2) when liability is found and the amount of the verdict is so *grossly inadequate* as prima facia to show a compromise; (3) where there is aliunde evidence, that is proof, aside from the verdict itself, that the verdict was a compromise. Any one or all of these elements may be present in a case. Here we have only the record before us. The jurors are not allowed to impeach their verdict. The verdict is not so gross and inadequate compensation as prima facia to show a compromise, and since every presumption of law is indulged in favor of the legality of a verdict and the performance of the jury of the requirements of their oath, to say that the verdict here was a compromise would be purely surmise and not supported by good logic or reason. Since there was no prima facie showing that the verdict was a compromise, no duty rested on the defendant in error to produce at the hearing of the motion for new trial any affidavits of the jurors to uphold the same. No doubt having been cast on the verdict, it did not need support, as was the case in *Wimpy* v. *Phinizy,* 68 *Ga.* 188.

■ Exception is taken, under the facts of the case, to the charge of the court on the burden of proof, which was as follows: "I charge you that, while the burden of proof in this case rests upon the plaintiff, if you believe from the evidence that the defendant company issued the policy sued upon, and if you believe from the evidence that the policy was transferred so as to show the plaintiff as the assured thereunder, and if you further believe from the evidence that the insurer company's agent was put on notice at the time of the transfer of the policy to the plaintiff that there was an outstanding security deed against the property in favor of S. B. Lippitt, trustee, and if you further believe that a loss occurred from fire to the property covered by the policy before the expiration of the policy, then, in that event, I charge you that the plaintiff would have carried the burden of proof and that the plaintiff would be entitled to recover whatever amount you find to be the value of the property at the time of the loss; and I charge you in this connection that if you find that the plaintiff has carried the burden of proof under the rules of law I have just assigned to you, then, in that event, I charge you that before you would be authorized to find against the plaintiff that the burden must be likewise

fully carried by the defendant company by a preponderance of the evidence to convince you that the defense, or defenses, set up by the defendant in this case are true. In other words, gentlemen, when the burden of proof has been successfully carried by the plaintiff, this entitles the plaintiff to recover, and the burden is not upon the plaintiff to convince you that the defense, or defenses, set up by the defendant are untrue, but if the defense, or defenses, set up by the defendant are affirmative in their nature, the burden is upon the defendant to convince you by a preponderance of evidence that such defense, or defenses, are true, provided the plaintiff has made her case to your satisfaction by a preponderance of the evidence as already outlined by you. I charge you, gentlemen of the jury, that one of the defenses set up by the defendant in this case is that the defendant company is not liable to the plaintiff for the reason, the defendant claims, that there was an outstanding security deed on record against the property in favor of S. B. Lippitt, trustee, of which the company had no notice, and in this connection I charge you that if the evidence satisfies you that the plaintiff has made out her case by a preponderance of the evidence to satisfy you that notice was given the agent of the company at the time the policy was transferred to her, then, in that event, the burden is cast upon the defendant to satisfy you by a preponderance of the evidence that neither defendant company or the defendant's agent was notified of the security deed at the time the policy was transferred to the plaintiff."

After a most careful consideration, we are unable to approve this charge. Upon whom lies the burden of proof in a particular case to establish a fact is a matter of vital importance, and the judge should be careful, in giving a charge on this subject, to give a clear and understandable exposition of it. In the case at bar, after the pleadings were finally amended and the case was ripe for trial, the plaintiff took the affirmative position that while it was true that there did exist, in violation of the express terms of the contract, an outstanding security deed on the property insured in favor of S. B. Lippitt, trustee, yet the defendant company had actual notice of this fact at the time the policy was transferred to her (that is at the time the new contract was entered into), and therefore the insurer waived this proviso and was estopped to set up the existence of the security deed as a defense. It is to be admitted that if this

be true, that is, that the defendant had notice of the existence of the security deed at the time of the transfer of the policy to the plaintiff, the defendant company could not rely, as a defense, on its existence as a reason for the forfeiture of the policy. *Clay* v. *Phœnix Insurance Co.,* 97 *Ga.* 44 (25 S. E. 417); *Athens Mutual Insurance Company* v. *O'Keefe,* 133 *Ga.* 792 (66 S. E. 1093); *Swain* v. *Macon Fire Insurance Co.,* 102 *Ga.* 96 (29 S. E. 147). The plaintiff thus assumed the burden of establishing by a preponderance of the evidence, *as a part of her cause of action,* the allegations of her petition in this regard, to wit: that the defendant company had actual notice of the existence of the security deed at the time it transferred the policy to the plaintiff. The defendant denied any notice of the existence of the security deed as alleged by the plaintiff, and for the purposes of this decision (for the other defense, to wit, that the policy was breached by the plaintiff keeping gasoline on the insured premises, was ignored by the court and is not contended for by counsel for the defendant) pleaded only one affirmative defense, to wit, failure of the insured to subscribe to her evidence taken on examination of the plaintiff by the defendant, in accordance with the provisions of the policy. It is settled law that once the *burden of proof* is placed on a party to establish the fact, such as is on one taking the affirmative of an issue, it remains upon him throughout the trial; and if he does not carry this burden by a preponderance of evidence, that is, if the probabilities under the evidence are equal as to the existence or nonexistence of the fact pleaded, there should be a verdict for the defendant. In the charge given the court said "the burden must be likewise fully carried by the defendant company by a preponderance of the evidence to convince you that the *defense, or defenses,* set up by the defendant in this case are true." He further said "the burden is upon the defendant to convince you by a preponderance of evidence that such *defense, or defenses,* are true." The court further stated in this connection that "one of the defenses set up by the defendant in this case is that the defendant company is not liable to the plaintiff for the reason, the defendant claims, that there was an outstanding security deed on record against the property in favor of S. B. Lippitt, trustee, of which the company had no notice." Lastly, he stated to the jury that "if the evidence satisfies you that the plaintiff has made out her case by a prepon-

derance of the evidence to satisfy you that notice was given the agent of the company at the time the policy was transferred to her, then, in that event, *the burden is cast upon the defendant to satisfy you by a preponderance of the evidence that neither the defendant company nor the defendant's agent was notified of the security deed at the time the policy was transferred to the plaintiff.*" Did this not tell the jury by reasonable implication that while it was the duty of the plaintiff to establish the fact of notice by a preponderance of evidence, yet it was the duty of the defendant to establish the fact of lack of notice, by a preponderance of evidence? This construction can very easily be placed thereon, and as such it was erroneous, as placing upon the defendant an unauthorized burden. Since the defendant pleaded one affirmative defense, a charge as to the shifting of the burden of proof, was proper; yet he should have *clearly* and *unmistakably* placed upon the plaintiff the entire burden as to proof of notice of the existence of the security deed in the defendant and should not have given a charge liable to the construction that the burden was upon the defendant to prove that it had no notice. *Parks* v. *Hailey,* 142 *Ga.* 391 (10) (83 S. E. 100) ; *Hyer* v. *Holmes,* 12 *Ga. App.* 837 (79 S. E. 58) ; *Milledgeville Cotton Co.* v. *Bacon,* 138 *Ga.* 470 (3) (75 S. E. 604) ; *Stewart* v. *Mynalt,* 135 *Ga.* 637 (2) (70 S. E. 325). Even if the charge is subject to the reasonable implication that the burden was cast on the defendant to prove by a preponderance of evidence that it had no notice, or to disprove the notice shown by the plaintiff's evidence, it is erroneous. *Rice* v. *Georgia National Bank,* 64 *Ga.* 173 (3-*d*). See also, in this connection, *Kimsey* v. *Rogers,* 166 *Ga.* 176 (8) (142 S. E. 667) ; *Southern Railway Co.* v. *Fleming,* 141 *Ga.* 69 (2) (80 S. E. 325) ; *Courson* v. *Pearson,* 132 *Ga.* 698 (2) (64 S. E. 997) ; *Richmond & Danville Railroad Co.* v. *Howard,* 79 *Ga.* 44 (3 S. E. 426). These erroneous instructions even when taken with the charge as a whole, which of course must be done, do not present a clear picture or a correct exposition of the law on this subject. If the judge, where he said "defense or defenses," had stated to the jury that the burden of proof (after the plaintiff had established her case by a preponderance of evidence) would be on the defendant to prove its affirmative defense that the plaintiff had failed to subscribe to her evidence, or had reasonably indicated that this was the defense he referred to, we do not think

the charges would have been subject to exceptions. However, as we have already pointed out, the charges are not subject to this construction, but by clear implication place on the defendant an unauthorized burden. The charges must of necessity have been confusing to the jury, so confusing that it is probable that they decided the case without the aid of the principles of the burden of proof at all. We think therefore that justice requires that a new trial should be had.

■ Where there is a requirement in a contract of fire insurance that the insured shall on notice by the insurer submit to an examination under oath touching the matters relating to the risk and shall subscribe to the same, if the plaintiff fails to submit to examination, or if after submitting to examination fails without reason to subscribe to same, and if the policy further provides that no suit shall be brought for recovery, under its terms, unless this condition be complied with, the plaintiff can not recover. *Firemen's Fund Ins. Co.* v. *Sims,* 115 *Ga.* 939 (42 S. E. 269). There is complaint made by the defendant that the judge in charging the jury eliminated this defense from their consideration. It has been said many times, and it is true as a practical proposition, that a judge can not cover an entire case in one sentence, and after a careful reading of the charge as a whole it is plain that the judge gave the defendant the full benefit of this defense, and that the jury so understood. Nor was it error, in the absence of a timely written request, for the judge to fail to explain what reasons would "justify" the plaintiff in her refusal to subscribe to the evidence. It appears from the evidence that the only ground assigned by the plaintiff for refusing to subscribe to the evidence given by her was that it was an incorrect transcription of her answers. If this were true, the plaintiff certainly was "justified" in refusing to subscribe thereto, and it is plain that in charging on this subject the judge had reference to whether or not the plaintiff actually thought the transcription was incorrect. It did not leave to the jury the right to hold *any* reason as being justifiable.

■ Complaint is made of the following charge: "The plaintiff seeks to recover the sum of $2000. . . You may allow the plaintiff, if you see fit to allow her anything, whatever amount you consider that the evidence shows that she is entitled to recover." The alleged error in this charge is that it allowed the jury to find

for the plaintiff in a sum less than $2000, the principal amount of the policy, whereas there was no issue on that point before the jury, and that it instructed the jury to make a compromise verdict for any amount they might see fit to find. It will be observed that the discussion we have already made, in disposing of the assignment that the verdict was a "compromise," effectively disposes of the complaint here made. In its answer the defendant denied the value of the property. There was no express admission by the defendant in the evidence that the property was of the value of $2000. It was an unliquidated amount. . The jury had before them the character of the property, the location, and other competent and relevant testimony from which to determine, and it was their exclusive right to do so, the value of the property, and the judge, under these circumstances, would have committed error if he had by his charge eliminated this tendered issue from the jury. The instruction does not remotely strike us as being one instructing the jury that they might compromise their conscientious conviction in order to reach a verdict.

This case is returned for a new trial because of the error in the judge's charge as set out in headnote 3 and division 3 of this opinion.

The cross-bill raises the question as to whether or not the judge erred in overruling the following demurrer to the defendant's answer: "Plaintiff demurs specially to the ninth paragraph of said answer upon the following grounds: (a) The same is not defensive and sets forth no defense against plaintiff's cause of action. (b) Upon the further ground that same shows on its face that the plaintiff did submit 'to said examination on oath' and no injury or damage is alleged to the defendant by reason of failure of the plaintiff to subscribe the same. (c) Upon the further ground that the said paragraph is in conflict with paragraph 3 of defendant's answer, in that paragraph 3 denies the endorsement on said policy, and for that reason the defendant's paragraph 9 is contradictory to the said paragraph 3, and sets forth no injury or damage to defendant, or liability on the part of the plaintiff for having failed to subscribe the said examination. 2. Plaintiff demurs specially to paragraph 3 upon the ground that same is in conflict with and contradictory to paragraph 9 of defendant's answer, the said third paragraph denying the endorsement: whereas said paragraph 9 in

effect admits the same, and the defendant can not 'blow hot and cold' as to said endorsement, and the said paragraph 3 being in conflict with paragraph 9 fails to put plaintiff on notice of the real position and defense undertaken to be set up by the defendant. 3. Defendant demurs specially to paragraph 8 of the defendant's answer upon the ground that the same is in conflict with and contradictory to paragraph 3 of defendant's answer. The one paragraph (3) denying the endorsement of said policy over to the plaintiff and the other paragraph (8) seeking to take advantage of contents of the policy declared upon, thereby tacitly admitting the transfer or endorsement to plaintiff and leaving plaintiff unadvised as to the real answer and position of the defendant in said case."

It is true that paragraph 3 of the defendant's answer denies paragraph 3 of the plaintiff's petition and specifically denies that the assured, under the policy sued on, was changed from the estate of Celem Crawford to Mrs. David I. Parnell (the plaintiff). This was one defense set up by the defendant. The defendant set up another defense that the defendant endorsed on said policy of insurance at the instance of Mrs. David I. Parnell an endorsement changing the name of the insured from the estate of Celem Crawford to Mrs. David I. Parnell, so that Mrs. David I. Parnell was the person named as the assured in said policy at the time of the fire which destroyed the insured property, and that Mrs. Parnell violated one of the conditions of the policy after she became the assured. The defendant also set up another separate defense that Mrs. Parnell, after she became the assured by endorsement on the policy, gave to S. B. Lippitt, as trustee, a security deed, conveying the property which had been insured by said policy, which the defendant claimed was a violation of another condition contained in the policy. In order to avail itself of the last two defenses the defendant assumed that the endorsement was made changing the name of the assured from the estate of Mrs. Celem Crawford to Mrs. David I. Parnell, and, in effect, so alleged, for unless Mrs. Parnell was the assured, her failure to live up to the terms and conditions of the policy pleaded would be immaterial and there would have been no obligation on her part not to violate the terms and conditions of the policy. And, although the last two defenses were contradictory to the first in that they assumed, and, in effect, alleged that the endorsement had been made, yet, the defendant is

entitled to prevail if it sustains any one or more of these defenses. "A defendant may in different paragraphs of his answer file contradictory or inconsistent pleas." *Kerr Glass Manufacturing Co.* v. *Americus Grocery Co.,* 13 *Ga. App.* 512 (2) (79 S. E. 381); Code of 1933, § 81-310. "A defense should commence with some appropriate words, but no formal commencement for a separate defense is necessary beyond some such words as 'and for a further defense.' Lippincott *v.* Goodwin, 8 How. Pr. 242; Benedict *v.* Seymour, 6 How. Pr. 298. But each separate defense must · be separately stated, and must be complete in itself. Royal Bank .*v.* Goldschmidt, 51 Misc. 622 [101 N. Y. Supp. 101]. Defenses are of two kinds: 1, Those which deny some material allegation on the part of the plaintiff; 2, those which confess and avoid these allegations. Donovan *v.* Main, 74 App. Div. 44 [77 N. Y. Supp. 229], and cases cited. So a denial is a defense, and should have first place in the answer, and, moreover, it should be separate from new matter affirmatively alleged. Staten Island Midland R. Co. *v.* Hinchcliffe, 34 Misc. 49 [68 N. Y. Supp. 556], 170 N. Y. 473 [63 N. E. 545]." Will's Gould on Pleading, 9th ed. 88, note.

Because of the rule of law that the defendant in his answer is permitted to assume inconsistent positions in separate defenses, we do not think the court erred in overruling the demurrer to paragraphs 3 and 9 of the answer on the ground that they were in conflict with and contradictory of each other, nor did the judge err in overruling the other grounds of the demurrer to the answer.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Guerry, J., concurs. Broyles, C. J., concurs in the judgment on the main bill of exceptions, and dissents from the judgment on the cross-bill.*

BROYLES, C. J., dissenting. It is well settled that pleadings are to be construed most strongly against the pleader; and where a defendant in one paragraph of his answer denies the allegations in a numbered paragraph of the petition and in another paragraph of the answer admits, in effect, the truth of the same allegations, "the admission, and not the denial, must prevail." *Bedingfield* v. *Bates Co.,* 2 *Ga. App.* 107 (58 S. E. 320); *Ney* v. *Clere Co.,* 5 *Ga. App.* 325 (63 S. E. 143); *Moore* v. *Smith Co.,* 4 *Ga. App.* 151 (3) (60 S. E. 1035); *Southern Granite Co.* v. *Dorn,* 37 *Ga. App.* 564, 568 (141 S. E. 59), and cit.; *Williams Co.* v. *Warner*

*Co.,* 125 *Ga.* 408, 411 (54 S. E. 95). In the instant case the defendant in paragraph 3 of its answer denied the allegations in paragraph 3 of the petition. However, in paragraph 9 of the answer, the defendant set forth facts and allegations which amounted to an admission that the allegations in paragraph 3 of the petition were true. The plaintiff interposed a timely special demurrer to paragraph 3 of the answer; the demurrer was overruled; the plaintiff filed exceptions pendente lite to that judgment, and subsequently assigned error thereon in his cross-bill of exceptions. In view of the foregoing ruling, the court, in my opinion, erred in overruling the special demurrer to paragraph 3 of the answer, and the judgment on the cross-bill of exceptions should be reversed.