## 599.   REEVES *v.* THE STATE.

A verdict of voluntary manslaughter will not be sustained as against the exception that the same is without evidence to support it, when the testimony of the witness and the statement of the defendant present only the issue whether the defendant was guilty of murder or was justifiable.

Conviction of manslaughter, from Meriwether superior court— Judge Freeman. May 30, 1907.

Argued July 18,—Decided July 25, 1907.

*W. R. Jones, Hill & Culpepper,* for plaintiff in error.

*J. R. Terrell, solicitor-general,* contra.

POWELL, J. This court is very slow to set aside the verdict of a jury, approved by the trial judge, on the ground that there is no evidence to support it; but in this case there is not the slightest scintilla of evidence upon which the verdict rendered can legally rest. The defendant was indicted for murder, and found guilty of voluntary manslaughter. If the jury had believed the testimony of the State's witness, and the dying declarations of the deceased as detailed by his wife, a verdict of guilty of murder would have been authorized; for, according to this version of the case, the defendant committed nothing less serious than a malicious, unjustifiable, unmitigated homicide. But by their verdict the jury found that the defendant was not guilty of this offense, and, for the purposes of the trial under review, acquitted him thereof. The testimony by which a conviction of murder would have been authorized having been eliminated, the remainder of the evidence in the case shows a perfect case of justifiable homicide. There was no evidence whatever of a homicide not justifiable, and not malicious, but provoked by an assault or other equivalent circumstances to justify the excitement of passion, that is to say, of a voluntary manslaughter. According to the State's testimony, the defendant and the deceased were walking along in the road quarreling; each had a gun, but without any more provocation than mere words, the defendant stepped to one side of the road, deliberately raised his gun and shot the deceased, who was making no assault whatever on him; after the deceased was shot and had fallen to the ground he raised his gun and shot the defendant. Of course this subsequent shot by the deceased could not justify or mitigate the defendant's offense already committed. According to the defendant's statement, corroborated by his witnesses, the deceased and a companion made a joint quarrel with him, which he sought to decline until the deceased, with the statement that he was going to shoot the defendant, jumped back, cocked his gun, aimed it and fired, the load striking the defendant, who to repel the attack, also fired his gun simultaneously, striking the deceased and mortally wounding him. If this be the truth of the case, the killing was justifiable homicide. There is no theory of mutual combat on

which the verdict can be justified. If one draws a gun on me and threatens to shoot me, no mutual combat arises by reason of the fact that I take physical issue with him and shoot first, even though I may have used opprobrious words to him. *Butler* v. *State,* 92 *Ga.* 601, 19 S. E. 51, *Boatwright* v. *State,* 89 *Ga.* 140, 15 S. E. 21. If we segregate the testimony and take so much of the defendant's statement as asserts that the deceased and his companion were provoking a difficulty with him, whether at the immediate scene of the difficulty or earlier in the day (for there was evidence of a previous quarrel), by words and by menaces, and likewise take so much of the State's testimony as asserts that the defendant shot the deceased before he had drawn any weapon, and that the latter made no effort to shoot until after the former had mortally wounded him, the homicide would not be manslaughter; for while in some cases words, threats, and menaces may be so circumstanced as to operate to afford a justification for a homicide on the theory of reasonable fear, yet in no case are they sufficient to reduce the offense from murder to manslaughter. *Cumming* v. *State,* 99 *Ga.* 662, 27 S. E. 177. It is true, so we find from the record, that over a month before the homicide occurred the defendant and the deceased had had a difficulty in which the deceased gave the defendant sufficient provocation to have reduced a homicide occurring on account thereof from murder to manslaughter; but there is not the slightest suggestion in the testimony or the statement of the defendant that the homicide was the result of or was in any wise connected with this previous difficulty. In fact from the context it seems manifest that this testimony was used for the sole purpose of showing the violent character of the deceased. In fact, after a close, careful scrutiny of the record, we find no evidence of a voluntary manslaughter. The verdict was manifestly a compromise. Such compromise, whereby the jurors give up their deliberate convictions and honest differences over the question of the defendant's guilt of the only crime in issue under the testimony, and compromise by convicting him of another offense of which he is manifestly not guilty, is unlawful; is unfair to the State and unfair to the accused. In this connection note the typic case of *Reed* v. *State,* ante, 153, 58 S. E. 312. It is true that the court gave the jury instructions on the law of voluntary manslaughter, and no exception is taken thereto; however this does not prevent

the verdict from being, as a matter of law, without evidence to support it, and exception is duly taken on that ground.

*Judgment reversed.*