## 5895. FRANKLIN v. THE STATE.

1. Under the rulings of this court in *Young* v. *State,* 10 *Ga. App.* 116 (72 S. E. 935), and in *Faison* v. *State,* 13 *Ga. App.* 180 (79 S. E. 39), it was proper for the trial judge to give in charge to the jury the law of voluntary manslaughter, for there was evidence authorizing the inference that there was a mutual intent to fight on the part of the accused and the deceased.

2. That the court may have erred in charging the law of murder in the

present case affords the accused no ground for complaint, since he was convicted of voluntary manslaughter.

3. In the absence of an appropriate request, the failure of the court to define the term "felony," when used in instructions to the jury with reference to the right of a person to kill another in order to prevent a felony from being perpetrated upon him, is not error requiring a new trial. *Helms* v. *State,* 138 *Ga.* 827 (7), 833 (76 S. E. 353).

4. The evidence authorized the verdict.

DECIDED OCTOBER 20, 1914.

Indictment for murder; from Twiggs superior court—Judge Hawkins. May 23, 1914.

*L. L. Porter,* for plaintiff in error.

*E. L. Stephens, solicitor-general,* contra.

RUSSELL, C. J. Besides the general grounds of the motion for a new trial, error is assigned upon certain instructions of the court on the law of voluntary manslaughter, and the failure of the court to define the meaning of the term "felony," in the charge as to the right of a person to kill another in order to prevent the commission of a felony upon himself. In the argument in this court something was said in regard to an improper remark of associate counsel for the State, but no such point is made in the record.

A contention urged before us is that the accused was either guilty of murder or justified in the homicide, and that the case falls under the rulings of this court in *Reed* v. *State,* 2 *Ga. App.* 153 (58 S. E. 312), and *Reeves* v. *State,* 2 *Ga. App.* 414, 416 (58 S. E. 548). Of course, if this were true, the court would have erred in charging the jury upon the subject of voluntary manslaughter. But though the defendant, according to his statement, might have been justifiable (certainly if the record had disclosed that the gun held by the deceased was pointed at him), still there is testimony on the part of the prosecution which not only indicates a mutual intent to fight, but also authorized the jury to find that the homicide was committed either under the influence of passion, or because the defendant apprehended that an assault, less than a felony, was about to be committed upon his person. It seems that the killing occurred about 4 o'clock Christmas afternoon. A crowd of negroes, under the influence of whisky, had assembled at the home of the defendant. Among the number was the deceased, who was asleep on a bed in the defendant's house. The defendant had left his home, and as he returned he ascertained that there had been a difficulty, and inquired of a woman named Moan, "what all that blood was doing

on her face." The defendant attempted to see a negro named George Smith, but as that person had gone, he talked with the witness McClendon, near a ditch; and this witness, with his brother, returned with the defendant to the defendant's house. As they approached the house Joe Harris, the deceased, came out and called to the defendant, who did not reply. The deceased then said, "Hays, God damn it, let me talk to you." At this time the deceased had in his hands a shot-gun, which he had picked up inside the door as he went into the yard. The defendant asked the deceased to stand his distance and tell him what he had to say. To this the deceased replied: "You are a fool, now. You ain't got any sense. . . I am coming to you now." With this the deceased, the gun in his hands, started toward the defendant, who thereupon fired his gun. The witness said that when the defendant returned to his house before the killing, he "come a rearing and a cursing and a charging"—was evidently very angry about something. This witness testified to a number of facts which would have made the case one of murder; but the right of saying which of the different views of the testimony represented the real truth was with the jury; and when we consider that the defendant was evidently much enraged by the occurrences at his house at the time the deceased awoke from his drunken stupor and came out of the door with the gun, it can not be said that the defendant has the right to complain if the jury, in their humanity, preferred to attribute the killing to the influence of passion, rather than to deliberate malice. Considering the condition of intoxication testified to by the witness and that when the deceased approached the defendant with the gun it was not aimed at the defendant, the jury were also authorized to infer that the defendant had no reason to apprehend that the deceased intended to commit more than a mere assault or assault and battery upon him. If the evidence had shown that the gun was pointed at the defendant, and it had thus appeared that the commission of a felony upon him was imminent, the homicide would have been justifiable; but it is well settled that where one in repelling a mere assault commits a homicide, he is at least guilty of voluntary manslaughter.

We conclude that the evidence fully authorized the inference that when the deceased, after being notified by the defendant that if he came on him he would kill him, approached with a gun in his

hands, but not cocked or aimed, the inference that he intended to make some kind of an assault upon the defendant was authorized. In this view of the case it is very similar in its facts to the cases of *Young* v. *State*, 10 *Ga. App.* 116 (72 S. E. 935), and *Faison* v. *State*, 13 *Ga. App.* 180 (79 S. E. 39) ; and the trial judge did not err in instructing the jury as to the law of voluntary manslaughter.

2-4. The remaining assignments of error are sufficiently dealt with in the headnotes.      *Judgment affirmed. Roan, J., absent.*