31424. LESTER *v.* THE STATE.

DECIDED FEBRUARY 8, 1947. ADHERED TO ON REHEARING MARCH 28, 1947.

44

*Thomas A. Jacobs Jr.,* for plaintiff in error.

*Charles H. Garrett, Solicitor-General, William M. West,* contra.

GARDNER, J. ■ (a) Counsel for the defendant, after reciting the facts substantially as set forth above, makes this statement:

"The jury on this conflicting evidence had its choice of murder, justifiable homicide or voluntary manslaughter in the heat of passion caused by words, threats, menaces, and an assault by deceased less than a felony. There were no other grades of homicide or issues involved in our humble judgment. There was no issue as to mutual combat, or any evidence that the defendant and the deceased mutually agreed to fight with weapons and did mutually engage in combat." It is conceded by distinguished counsel for the defendant that insofar as the facts are concerned, the jury were authorized to find the defendant guilty of voluntary manslaughter in the heat of passion caused by words, threats, menaces and an assault upon the deceased by the defendant less than a felony. But he contends that the court erred, under the facts of the case, in submitting to the jury the law of voluntary manslaughter as applied to mutual combat. If mutual combat is involved, under the facts of this case, and the judge committed no reversible error in his instructions to the jury and in his omission to charge the jury on the law of voluntary manslaughter or manslaughter in either

of its phases, then the judgment should be affirmed, otherwise reversed. This we think is the crux of the issue presented for our decision. Indeed, under the admission of counsel for the defendant, it is practically the only issue before us. This is true, notwithstanding that counsel for both sides have so brilliantly polished their contentions against each other that they almost blur the line of demarcation which we must endeavor to find and trace.

(b) The distinguishing difference between the two phases of voluntary manslaughter is: In mutual combat words themselves imply to both participants an equal degree of wrong; whereas the other phase contemplates a greater wrong on the part of the slayer than the slain. Both phases involve passion supposed to be irresistible. Because of the existence of such passion the law contemplates that the jury may consider it and reduce the homicide from murder to manslaughter if they find from the facts that such passion so overwhelmed reason that the slayer could not, under the frailties of human nature, resist. This is always a jury question.

(c) Concerning such an issue of fact, this court has held repeatedly that if there is the slightest doubt under the evidence as to whether voluntary manslaughter in either of its phases is involved, it is the duty of the trial judge to submit that issue to the jury for them to determine and if the court fails to do so and the defendant is found guilty of murder, it is reversible error. Where only voluntary manslaughter is involved, under the defendant's statement, the court may submit voluntary manslaughter, but it is not reversible error to fail to do so in the absence of a written request.

(d) We will not here enter into a detailed discussion as to whether the evidence, together with the defendant's statement, or either alone, involved voluntary manslaughter on the theory of mutual combat. We think this unnecessary, since we have set out somewhat in detail the evidence and the defendant's statement verbatim. Suffice it to say that the jury were authorized to find that both the deceased and the defendant were armed with deadly weapons—pocket knives, which they had blandished and exhibited to each other. While it is true that the unopened weapon of the deceased was found beneath his wounded body, yet we think, under all the facts and circumstances of the case, the jury were authorized to find that both the defendant and the deceased mutually

agreed to fight to the finish with deadly weapons. They were so armed. It is immaterial which got in the first blow. The knife of the deceased being easily opened and closed, the jury were authorized to find that the deceased was endeavoring to open it or that he had opened it and that it had been reclosed in the struggle between them. This was for the jury to determine. In our opinion the court did not err in submitting to the jury voluntary manslaughter as applied to the principle of mutual combat, and there was sufficient evidence as a whole, indeed if not from the defendant's statement alone, for the court to submit voluntary manslaughter in both of its phases. *Cribb* v. *State,* 71 *Ga. App.* 539 (31 S. E. 2d, 248). See also the many annotations under § 26-1007, particularly under keywords "charge" and "mutual combat" in the Annotated Code and the 1945 Supplement thereto. In this connection we might state that the contention that venue was not proved is without merit.

■ Special grounds 1, 2, and 3 assign error upon three excerpts from the charge of the court. The excerpt complained of in special ground 1 reads: "In other words, murder is the intentional killing of a human being, or the killing of a human being by the intentional use of a weapon that as used is likely to kill, and a killing without justification or mitigation."

Error is assigned on this charge (a) because it instructed the jury that an intentional killing is murder; (b) that the use of the words "justification" or "mitigation" limits and qualifies the second part of the charge to the intentional use of a weapon which as used is likely to kill.

Excerpt from special ground 2 reads: "I charge you further that the law presumes every intentional homicide to be malicious until the contrary appears from circumstances of alleviation, of justification, of mitigation or excuse; and the burden is on the slayer, whenever an intentional homicide has been proved, to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him." Error is assigned on this excerpt because it placed an undue burden on the defendant of proving mitigation or alleviation to the complete satisfaction of the jury and put the burden on the defendant of showing mitigation or alleviation to the absolute satisfaction of the jury, whereas the law requires only that he prove these things to the reasonable satisfac-

■

tion of the jury to the extent that it creates a reasonable doubt in their minds.

The third excerpt (special ground 3) reads: "When a killing is proven to be the intentional act of the defendant, the presumption of innocence with which he enters upon his trial is removed from him and the burden is upon him to justify or mitigate the homicide; unless the evidence introduced against him show mitigation, justification, alleviation or excuse, but, as I have charged you, gentlemen, heretofore, the evidence of justification or mitigation may be found in the testimony introduced against him. If there be no evidence introduced to show justification or mitigation and if the evidence introduced shows the homicide committed as charged in the indictment, the burden would be upon the prisoner to show mitigation, or excuse." Error is assigned on this charge (a) because it deprived the defendant of the presumption of innocence which abides with him throughout the trial; (b) because it placed on the defendant the burden of showing mitigation or excuse, instead of the State; (c) that the presumption of a killing raises no presumption of guilt of manslaughter; that this charge took away the presumption of innocence and put on the defendant the burden of proof; (d) because the charge ignored and failed to give due weight to the defendant's statement and took away the presumption of innocence until the defendant put up evidence to rebut the State's evidence; (e) because the court expressed an opinion by the use of the word "homicide." In the first of these grounds the definition of murder is criticized. The second and third grounds criticize the charge of the court on the subject of presumption of malice. All three of these grounds are interwoven with the theory that the law presumes malice where an intentional killing is shown and where the proof which shows the intentional killing of a human being does not show any evidence of justification or mitigation. As a matter of law, malice is presumed when an intentional killing is shown where the proof which shows the killing contains no proof of justification or mitigation. In such a situation insofar as murder is concerned, the burden of showing justification or mitigation is shifted to the accused. The court was dealing in this ground with the charge of murder and had fully defined murder under the sections of the Code pertaining thereto. As we view the evidence, it does show, from one viewpoint, that the defendant killed the

deceased with a deadly weapon, without at the same time showing justification or mitigation. *McLeod* v. *State*, 128 *Ga.* 17 (57 S. E. 83) ; *Worley* v. *State*, 136 *Ga.* 231 (71 S. E. 153). Under the authorities above cited, and from the many others to the same effect, we think that the excerpts contained in these three grounds are technically correct as applied to murder and were justified under the evidence. The defendant was not convicted of murder but of voluntary manslaughter, a crime without malice. In such event, if the charges were erroneous, any error on the subject of murder or malice would be harmless. *McDuffie* v. *State*, 121 *Ga.* 580 (49 S. E. 708) ; *Simpson* v. *State*, 12 *Ga. App.* 292 (77 S. E. 105) ; *Gray* v. *State*, 12 *Ga. App.* 634 (77 S. E. 916) ; *Land* v. *State*, 11 *Ga. App.* 761 (2) (76 S. E. 78) ; *Faison* v. *State*, 13 *Ga. App.* 180 (4) (79 S. E. 39) ; *Franklin* v. *State*, 15 *Ga. App.* 349 (2) (83 S. E. 196).

■ Special grounds 4, 5, 6, 7 and 13 assign error on excerpts from the charge of the court. Special ground 4 assigns error on the following charge of the court: "In other words, gentlemen, voluntary manslaughter is the intentional killing of a human being, or the killing of a human being by the intentional use of a weapon that, as used, is likely to kill, but a killing under circumstances to justify the excitement of passion and to exclude all idea of deliberation or malice, either express or implied." Error is assigned on this excerpt because (a) the court omitted to state that the intentional killing must be "unlawful;" (b) an intentional killing may be justified and lawful even though done under heat of passion.

Special ground 5 assigns error on the following excerpt: "If a person shall kill another in his defense it must appear that the danger was so urgent and pressing at the time of the killing that, in order to save his own life, the killing of the other was absolutely necessary, and it must appear also that the person killed was the assailant; or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given. In that same connection, I charge you, if the person shall kill another in his defense it must appear that the danger was so urgent and pressing at the time of the killing that, in order to save his own life, the killing of the other was absolutely necessary, and it must appear also that the person killed was the assailant; or that

the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given. Before the slayer can be justified it must appear that he acted without malice, not in a spirit of revenge; that the deceased was the assailant; that in order to save his own life it was necessary to kill his adversary, or that he was under the pressure of other equivalent circumstances. He can not avoid the fearful responsibility of guilt by the bare fear of the apprehension of danger; the danger must be urgent and pressing at the time. He must decide the momentous question with reference to his accountability to the law at the time, and by the same mental and moral faculties which he employed to cut the deceased, if you find that he did cut the deceased. Mutual intent to fight does not necessarily reduce the crime from murder to manslaughter. In order to do so the killing must be the result of that sudden violent impulse of passion, supposed to be irresistible; for if there should have been an interval between the assault or provocation given and the homicide, of which the jury in all cases shall be the judge, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge and be punished as for murder." The movant assigns error on this excerpt from the charge: (a) because it should have been qualified, and the jury should have been instructed if they found that deceased was the aggressor, the accused was not required to show he had in good faith declined, or endeavored to decline further struggle before the fatal wound was inflicted. The accused also says if deceased was the aggressor, it was error to charge that accused must show under such circumstances that it was absolutely necessary for accused to kill deceased in order to save his own life. (b) Because the court confused the law of justifiable homicide in mutual combat with the law of voluntary manslaughter in mutual combat; (c) because the court's charge required the defendant to show an absolute necessity to save his own life in order to be justified; (d) the law of justifiable homicide was confused with the law of mutual combat; (e) it made justification of the accused depend upon an absolute necessity to kill to save his own life, depriving him of the right to kill in apparent necessity acted upon in good faith; (f) the court intimated that the accused acted under a bare fear only by proof which did not justify a real fear; (g) that the court intimated an opinion in that he acted on a bare fear only, and did com-

mit a crime and decided a momentous question erroneously; (h) that in stabbing the deceased he acted under a bare fear only; (i) the court should have charged the jury that if the deceased did make an assault on the accused with a weapon likely to produce death and in a manner apparently dangerous to life, the fact that the accused may have provoked the difficulty would not put him in the wrong for resisting it so far as was necessary to the defense.

Special ground 6 assigns error on the last-above quoted excerpt on the ground (a) that the court charged the law of voluntary manslaughter as related to mutual combat, when this phase of voluntary manslaughter was not involved in the case; (b) that if the law of mutual combat was involved, the charge of the court was error.

Special ground 7 assigns error on the following charge: "Should you believe that the defendant cut, wounded and killed the person named in the indictment, in the manner and form as charged therein, but that at the time of the killing, the deceased was committing, or attempting to commit a serious personal injury on the person of the defendant, less than a felony; or, that the circumstances were such as to justify the fears of a reasonable person that the deceased intended, endeavored, or was about to commit a serious personal injury on the person of the defendant, less than a felony; or, that other equivalent circumstances surrounding the killing to justify the excitement of passion and to exclude all idea of deliberation or malice either express or implied, then and in that event, you would be authorized to convict of voluntary manslaughter." Various assignments of error are alleged on this excerpt, chief of which is to the effect that the fears which the law authorizes in order to reduce a homicide from murder to manslaughter or a homicide in which the defendant is justified, must be those of the defendant and not the fears of a hypothetical person. The other assignments of error in this ground are fully covered by similar assignments hereinabove set forth, and we deem it unnecessary to state them here.

Special ground 13: The excerpt from the charge in this ground is identical with the excerpt in special ground 4 and the assignments of error are practically the same. Since the excerpts mentioned in the grounds under this division attack the charge of the court as applied to voluntary manslaughter in both of its phases,

we will discuss them together. (1) The assignment in special ground 4 as to that excerpt contends for a reversal because the court failed to include therein "unlawful" intention of killing. We might state that this excerpt standing alone is erroneous, but it is elementary that we must look to the entire charge to see whether an excerpt from a charge standing alone is reversible error when we view it in the light of the charge as a whole. Just preceding this excerpt complained of the court read to the jury the Code, §§ 26-1006 and 26-1007 on voluntary manslaughter. In the first of these sections manslaughter is defined as the unlawful killing of a human being. When the court had finished charging the Code sections as mentioned above on voluntary manslaughter, the excerpt complained of was a mere further elaboration of the law on voluntary manslaughter. Thereafter, in this same connection, in the excerpt set out in special ground 7, the court referred to the killing as set forth in the indictment. The indictment alleged the killing to be unlawful. It thus appears that when we view the charge on voluntary manslaughter as a whole, as submitted by the court to the jury, the contentions on these grounds show no reversible error under the facts of this case, although as stated the judge should have, in this excerpt, used the word "unlawful" intentional killing. Neither does it appear that the instructions contained in these excerpts viewing the charge as a whole, confused the law of voluntary manslaughter with the principle of justification.

(2) As we have observed in the first division of this opinion, voluntary manslaughter as related to mutual combat is involved under the evidence. When we view the charge as a whole, we find no reversible error in the charge of the court on the subject of voluntary manslaughter in either of its phases. It does not appear that the jury could have been misled or confused as to the principle of justification under either a real or an apparent necessity to kill to the prejudice of the defense of the accused. Particular emphasis is urged on the part of the defendant because the court charged the Code, § 26-1014. This section is applicable only where voluntary manslaughter is involved, as related to mutual combat. Before the court gave the principles of this section in charge he particularly called the jury's attention to the fact that they should not apply this section unless and until they reached the conclusion from the evidence that at the time of the homicide the defendant

and the deceased were engaged in mutual combat. Since the evidence did authorize, if it did not require, the court to charge voluntary manslaughter as related to mutual combat, the giving of the principles of this section was proper. Viewing the charge as a whole, the jury could not have been misled. There is no reason to believe that they were confused or that they did not clearly understand the principles of law as applied to justification under either a real or apparent necessity. Neither does it appear that they were confused or did not clearly understand the law as applied to voluntary manslaughter, in its two phases.

In this connection it is contended that the excerpt from the charge of the court in special ground 5, "at the time of the killing" limited the defendant's justification to the very time of the killing, and excluded all antecedent events. Counsel for the defendant call our attention to the cases of *Nixon* v. *State,* 14 *Ga. App.* 261 (80 S. E. 513), and *Daniels* v. *State,* 162 *Ga.* 366 (4) (133 S. E. 866). This contention of counsel for the defendant is not well taken. In the instant case the court in using the words "at the time of the killing" was charging the Code, § 26-1014. That section provides for justification and sets forth when one may be justified in taking the life of another when they are engaged in mutual combat. The cases cited refer to voluntary manslaughter under the other phases, and the facts of those cases are not applicable to the facts in the instant case.

■ Special grounds 8 and 14 assign error on excerpts from the charge of the court in reference to justifiable homicide as related to reasonable fears. The excerpt from the charge under special ground 8 is: "Now, in that same connection, I am going to repeat, gentlemen, the law of justifiable homicide. Justifiable homicide is the killing of a human being in self-defense or in defense of one's person against one who manifestly intends or endeavors by violence or surprise to commit a felony upon such person. A bare fear of any of those offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, a reasonably courageous man, not a coward, and that the party killing really acted under the influence of those fears and not in a spirit of revenge. I charge you, in order to justify a killing, gentlemen, under the fears of a

reasonable man, the defendant must believe at the time that he slays his adversary that it is necessary or apparently necessary for him to take the life of his adversary to prevent a felonious assault upon him. That is the law with respect to fears of a reasonable man. Mere provocation by words, threats, menaces or contemptuous gestures, that is mere provocation, shall not be sufficient to free the person killing from the guilt and crime of murder and reduce it to manslaughter and such words, threats, menaces or contemptuous gestures, if any, gentlemen, to justify the killing must be such as to create in the mind of the slayer, as a reasonable man, that there is an apparent necessity to take the life of his adversary in order to prevent a felonious assault by his adversary on him. That is the law of this case.

"I charge you further, gentlemen, that the doctrine of reasonable fears as a defense applies to a case of homicide where the danger apprehended is urgent and pressing or apparently so at the time of the killing. I charge you further that a bare fear on the part of the defendant of any of those offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man that the party killing really acted under the influence of those fears and not in a spirit of revenge. If at the time of the killing the deceased was making no assault upon the slayer and the slayer had no occasion at that time to apprehend any danger from the deceased, the killing could not be justifiable homicide." Error is assigned on this ground (a) that the most reasonably courageous man would have been excited; because the court in said charge put upon the defendant a greater burden than the law required; (b) because it put upon the defendant the burden of showing that at the very time of the killing it was necessary for the defendant to take the life of the deceased to prevent a felonious assault upon him, whereas under the law the jury may consider all the facts and circumstances that preceded and led up to the killing and it was error to confine the jury's investigation to what happened at the instant of the killing; (c) because the charge made justification or mitigation depend upon what transpired at the instant of the killing; (d) that the charge required the defendant to show that he was not in actual danger at the time he killed the deceased and disregarded an apparent danger.

Ground 14 assigns error as follows: "If at the time of the killing the deceased was making no assault upon the slayer, and the slayer had no occasion at that time to apprehend any danger from the deceased, the killing could not be justifiable homicide." Error is assigned upon this ground because (a) the court used the words "the slayer" and (b) restricted the jury to consideration of circumstances at the very time of the killing and did not instruct them to consider the various facts and circumstances which may have occurred sometime prior to the killing; (c) and intimated an opinion that the accused unlawfully killed the deceased not in self-defense. When we view the charge as a whole under the facts of this case we find no error for any of the reasons assigned in these special grounds.

■ Special ground 15 complains because the court erred in charging as follows: "To impeach a witness is to show to the satisfaction of the jury that such witness is unworthy of belief. A witness may be impeached by disproving the facts testified to by him; by proof of contradictory statements previously made by him as to matters relevant to his testimony and to the case.

"If it is sought to impeach a witness by proof of contradictory statements previously made by him as to matters relevant to his testimony and to the case, he may be sustained by proof of general good character, the effect of the evidence to be determined by the jury.

"When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence. The credit to be given his testimony where impeached for contradictory statement out of court shall be for the jury to determine.

"The credibility of the witnesses being a matter to be determined by the jury under proper instructions from the court, if an effort should be made to impeach a witness it would be for the jury to determine whether such effort has been successful." Error is assigned on this charge because there was no effort made to sustain any witness sought to be impeached by proof of general good character. Upon a careful reading of the evidence there was no evidence authorizing the court to charge on the impeachment of wit-

nesses, and we think the charge on impeachment as set forth in this ground was altogether inapplicable to the facts in the case, since there does not appear to be any contradictory statements by any witnesses introduced by the State. There seems to have been an effort to do this, but no conflict developed. Since there were no contradictory statements proved, a charge on this phase of the case was harmless. See, in this connection, *Kelly* v. *State,* 118 *Ga.* 329 (45 S. E. 413) ; *Alexander* v. *State,* 32 *Ga. App.* 488 (3) (123 S. E. 923) ; *McCommons-Thompson-Boswell Co.* v. *White,* 33 *Ga. App.* 20 (125 S. E. 76) ; *Geer* v. *State,* 184 *Ga.* 805 (2) (193 S. E. 776). We find no reversible error assigned in this ground.

■ Special ground 9: This ground assigns error because the evidence submitted fails to establish the venue. The brief of evidence approved by the court shows that one of the witnesses testified: "Solomon died bleeding. The blood formed a puddle that stayed there three or four days. I picked this little knife up right in the blood when we moved Solomon, right down by his side. I don't know where the knife was, but I never saw it until I moved him. It was closed up like it is now when I found it. . . It was in the blood. That happened right at the corner of Jones and College Streets, in the City of Macon and in Bibb County, Georgia." It is contended that this testimony referred to where the knife was found and not where the fatal blow was inflicted. We disagree with counsel's construction of this evidence. It proves the venue of the crime.

7. Special ground 12 assigns error on the court's refusal to give a written charge as follows: "If the jury, after considering all the facts and circumstances of the case, entertain a reasonable doubt as to whether the defendant acted under the fears of a reasonable man, and took life under such circumstances, then under the law the jury should resolve such reasonable doubt in the defendant's favor." Error is assigned (a) because the failure to charge it was particularly harmful in view of the fact that the judge stressed "bare fear" and that he must have acted under the fears of a reasonably courageous man, not a coward; (b) because the court had instructed the jury in effect that the defendant should be judged by a hypothetical man, whereas the reasonable fears should have been those in the defendant's mind. The charge as a whole fully covered the law applicable to the doctrine of reasonable fears. See

*Dotson* v. *State,* 129 *Ga.* 727 (59 S. E. 774), and a number of cases therein cited.

█ Special ground 11 assigns error upon the admission of testimony over the objection of counsel for the defendant as follows: "Q. 'What made Lester get up?' A. 'I don't know unless he wanted to get Solomon.' The witness had already testified that Solomon was standing up and started to the door of the bus, and Lester was sitting down at that time.

"At the time the witness attempted to answer by saying: 'I don't know unless he wanted to get Solomon'—the answer was objected to on the ground that it stated a conclusion of the witness.

"The court admitted this answer and allowed the testimony 'I don't know unless he wanted to get Solomon.'"

Counsel for the defendant cites a number of authorities to sustain his contention in this ground. We say without hesitation that as a general proposition the admission of this testimony was error. The defendant contended that he was appoaching the rear of the car for a legitimate purpose. This witness was allowed to testify, over objections, what the defendant had in mind when he approached the rear of the car. This he should not have been permitted to do under the Code, § 38-1708. See *Hudgins* v. *State,* 2 *Ga.* 173, wherein the court held that the opinion of a witness as to the intention of the deceased in approaching the prisoner is not evidence. See also *Fundy* v. *State,* 30 *Ga.* 400; *Hawkins* v. *State,* 25 *Ga.* 207 (71 Am. D. 166). There are a number of other decisions to the same effect. The State relies on the case of *Cobb* v. *State,* 185 *Ga.* 463 (195 S. E. 758). We do not think the case relied on by the State is authority, under the facts of this case, for the State's contention that the admission, over objection, in the instant case was admissible. We have studied this ground very carefully and can not reach any other conclusion but that the court erred in admitting the testimony as set forth in this ground, but we have reached the conclusion that under the facts of this case the illegal admission of the testimony is not cause for a new trial. It must be kept in mind that the verdict in this case was for voluntary manslaughter only. We do not think, where the evidence authorized voluntary manslaughter in either of its phases, that why the accused approached the deceased becomes very material. If the jury found the defendant guilty of voluntary manslaughter as

related to mutual combat, we are to judge the participants by what was being done at the time the mortal blow was given or immediately in connection therewith. If the jury found the defendant guilty of voluntary manslaughter under the other phase, such conduct of the deceased as to excite passion or because the deceased was endeavoring to inflict an injury less than a felony, it does not appear material what was in the defendant's mind before the mortal blow was inflicted. It seems to make little difference whether the defendant left his seat for the purpose of leaving the bus to go home or for some other purpose. If the witness had testified that the defendant left his seat for the purpose of going home and not for the purpose of having any difficulty, and such had been admitted over objection, we do not think that it would have had any bearing with the jury one way or the other under all the facts and circumstances of this case, as revealed by the evidence. The court instructed the jury on voluntary manslaughter as related to mutual combat to judge the conduct of the defendant at the time the mortal blow was inflicted. As to the other phase of manslaughter, the court fully instructed the jury as to the law applicable thereto. The jury may and could have believed that the defendant did leave his seat, as he contended, for the purpose of going home. Or they could have believed, under all the evidence other than the illegal conclusion of the witness, that he left his seat for the purpose of making an unlawful attack amounting to the elements going to make up manslaughter, and still return a verdict for voluntary manslaughter. Or they could have found, under the evidence, complete justification. In either event we can not see how the erroneous admission of this testimony requires a reversal of the case. So under the record of this case, this assignment of error does not require a reversal.

■ Special ground 10 assigns error on the refusal of the court to admit certain evidence to prove the fact that the defendant voluntarily surrendered to the deputy sheriff a few hours after the homicide. On cross-examination counsel for the defendant propounded to the witness the following question: "The defendant came down and voluntarily surrendered and told you he was going to give up." State's counsel interposed an objection as follows: "I object to anything he told him." Movant assigns error on this assignment because he expected and hoped to prove that the defend-

ant did voluntarily surrender to the deputy sheriff. Error is assigned further on the ground that the defendant did voluntarily surrender to Mr. Peacock and that the defendant said that he wanted to give up and that the deputy sheriff would have so testified. And further because the State undertook to prove flight of the defendant and the evidence was submitted by the State to prove flight, in that witnesses for the State testified that the defendant fled from the scene of the crime. As an original proposition, an accused may not show that he voluntarily surrendered, but when the State submits evidence as to flight of a defendant, such evidence of flight may be considered by the jury as a circumstance tending to show guilt. After this is done, the law permits the defendant to show that he voluntarily surrendered to the sheriff in order that the jury may determine whether the flight of the defendant was prompted by a consciousness of guilt or for some other reason. If the flight was for some other reason than a sense of guilt on the part of the defendant, then the jury should draw no harmful inference against the defendant by reason of flight. We think the court erred in refusing to allow the testimony as set out in this ground. *Dixon* v. *State,* 12 *Ga. App.* 17 (76 S. E. 794); *Bryant* v. *State,* 191 *Ga.* 686 (14) (13 S. E. 2d, 820). We are of the opinion that the court committed error as set forth in this ground. But the fact was well established before the jury that the defendant did voluntarily surrender to the sheriff a short time after the homicide. There was evidence to the effect that he left the scene of the homicide, went to his home about one-half a mile away, dressed, went to the sheriff's office and surrendered. This being true, the assignment of error under this ground shows no reversible error. *Louisville & Nashville R. Co.* v. *McCamy,* 72 *Ga. App.* 769 (35 S. E. 2d, 206).

 The record in this case is somewhat voluminous, containing over 100 pages. The briefs are likewise voluminous, containing 94 pages. There is a wealth of authorities cited by counsel for both parties on every issue involved. We have read and studied the record and the briefs of counsel to the best of our ability and have considered the case from all of its angles. It would be practically impossible to comment on the many decisions called to our attention by counsel.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*