31617. NOBLES *v.* THE STATE.

Decided July 16, 1947.

*R. R. Forrester, R. D. Smith,* for plaintiff in error.

*W. C. Forehand, Solicitor-General, Steve F. Mitchell,* contra.

GARDNER, J. ■ Special ground 1 complains of the admission of testimony, over the objections of the defendant. While Edwin Maddox, a witness for the State, was being cross-examined, counsel for the defendant propounded the following question to him: "Well, about that boy, this one here got a knife wound in the back, didn't he?" The State objected to the admission of this testimony on the ground that it was irrelevant, immaterial, prejudicial and had no bearing on the case. We may concede that this objection at the time it was made, was not good. However, when we look to the whole evidence of the witness, we can not see that it was harmful because the witness later on, in the same cross-examination, testified: "I do not know who or what hit him. I did not testify that I was standing there looking at him. I was sitting there on my car and I did not watch him. I do not know whether anybody else was cut. I do not know who was cut. I wasn't in the fight. I did not know what our crowd had. I did not look in their pockets. I know they had no knives

out. They didn't have no knives out. As to me knowing that no one of the defendant's friends who were there with him could have cut him with a knife, I don't know who cut him." The effect of this testimony of the witness is that he did not know who cut James C. Hand, the party having the wound on his head. There appears no reversible error in this ground.

■ Special ground 2 assigns error as follows: "Because, while James C. Hand, a witness sworn for the defendant, was on the witness stand, he was permitted, under the objection of the defendant's counsel, to testify as follows:

"Q. James, this is not the first time that you and James Wesley Nobles have been out on a spree, is it? Defendant's counsel objected to this evidence on the ground that it is irrelevant and immaterial. This objection was overruled by the court and the witness continued his testimony as follows: Q. I will ask you this, this is not the first time you have been involved in a fight is it not, Mr. Hand? A. In a fight? Q. Yes? You went down here to the Colonial Cafe and engaged the proprietress in an argument, did you not? A. No, sir. Defendant's counsel, 'objects to witness being asked about any other occasion, on the ground that it is entirely irrelevant and immaterial, and can not have any bearing on the issues in this case, it is an entirely different proposition, is irrelevant and immaterial because it has to do with another occasion, at another time and certainly has no bearing on this case, and can not, in any way, reflect upon or illustrate the issues in this case, and on the further ground that it is not impeaching.' This objection was overruled by the court and the witness continued to testify as follows: Q. All right, answer the question. A. Yes, sir. Q. You went down there and tried to get a room at the Colonial Hotel, didn't you, is that right, just answer the question? A. I don't remember. Q. Were you drunk? A. Yes, sir. Q. You do not remember asking for a room there? A. No. Q. Who was with you, Mr. Hand? A. I don't know. Q. You don't know that? A. No, sir. Q. You do not know who struck that woman down there that run the Colonial Hotel? A. No, sir.

"Movant contends that the court committed error in overruling the objections made to this evidence and permitting the same in evidence to the jury on the ground stated in such objection and

says that such objection should have been sustained and the evidence excluded.

"At a later time in the trial, the defendant offered evidence for the purpose of showing that on some previous occasion, the deceased had caused a disturbance at a party held in the neighborhood which resulted in a fight. This evidence was objected to by the State's attorney and the objection sustained. The objection made by the State's counsel was that the 'defendant is trying to introduce the character of the deceased and the prosecutor and this is the proper way—he can not do it by specific instances. He can not impeach a witness in this manner.'

"In discussing this objection reference was made to the objection which had previously been made to the above quoted evidence of James Hand and the court then made this statement:

" 'I have reversed that ruling, if I made any such ruling this morning, and I now instruct the jury that, in regard to the questions asked by Mr. Mitchell, that is, as to James C. Hand—if he did not do such a thing, at such and such a time, all that is withdrawn—anything the witness, James C. Hand, may have answered to the questions propounded is now withdrawn from your consideration, gentlemen.'

"This was not sufficient to withdraw the evidence of James C. Hand from the jury because the court used this language: 'I have reversed that ruling if I made any such ruling.'

"Movant contends that this did not have the effect of unqualifiedly withdrawing the objectionable evidence of James C. Hand because it was qualified with the statement, 'if I made any such ruling this morning.' "

We have no hesitancy in stating that the evidence as set out in this ground was inadmissible. We are of the opinion, however, that under the record of this case the court corrected the error, if any there was, under the assignment general in its nature.

■ Special ground 3 complains of the following excerpt from the charge of the court: "If, after careful consideration of all of the evidence in this case, you are satisfied beyond a reasonable doubt that on the occasion under investigation, the defendant named in this indictment and now on trial did then and there kill the deceased named in this indictment by then and there shooting him, as charged, it would be your duty to find him guilty,

and, in that event, the form of your verdict would be: 'We, the jury, find the defendant guilty.' "

We find no vice in this excerpt from the charge, even standing alone. It will be observed that when the court used the words "as charged" he limited the conviction of the defendant to the evidence beyond a reasonable doubt as charged in the indictment. Certainly these words called to the jury's attention that the State must prove beyond a reasonable doubt every charge in the indictment. The court charged on the presumption of innocence, as well as the burden of proof, murder, voluntary manslaughter in both of its phases, voluntary manslaughter in its two degrees, accident, and justifiable homicide, and stated to the jury very clearly and plainly that these offenses, when embraced within the indictment, and the evidence adduced, brought into issue all of these offenses as well as the defense of the defendant, and stated that it was for the jury to determine, under the indictment and the evidence, the guilt or innocence of the accused. We can not comprehend how the court could have made the issues plainer under this excerpt as well as the whole charge.

■ Special ground 4: Error is assigned upon the following charge of the court: "In considering whether the defendant is guilty of murder, I charge you that, unless the State establishes to the satisfaction of the jury beyond a reasonable doubt that the defendant, with malice aforethought, either express or implied, did kill and murder the deceased you would not be authorized to convict him for murder. That I believe I covered in part at least in another portion of my instructions. And, while you may consider any prior threats or statement made in connection therewith by the defendant, such threats or statements, if made, would not alone authorize a conviction, and, if you find that there was a meeting of the parties later and death resulted to Richard Lee Maddox,—if you find that the deceased alone or in company with others became the aggressor and the conduct of the deceased of [or] such others was sufficient to justify the fears of a reasonable man that his life was in danger or that an injury amounting to a felony was about to be committed upon him he could not be convicted of murder."

In this particular excerpt from the charge of the court, the court was at that time dealing specifically with the charge of

murder. Elsewhere in the charge the court fully covered the lower grades of homicide which were embraced within the indictment and applicable under the evidence, as well as justification on the part of the defendant both under the principle of reasonable fears and an actual unlawful assault on the part of the deceased on the defendant, wherein the defendant would be justified in taking the life of the deceased. When we view the charge as a whole under the facts of this case, this ground is not meritorious.

■ Special ground 5 assigns error on the ground that after the court had submitted its charge to the jury and they retired for a consideration of the case, the jury returned for further instruction. The foreman stated that there were some questions they would like to have answered and that these questions were in regard to voluntary manslaughter and involuntary manslaughter. The court then stated to them that he could better answer their questions by referring them to the Code sections which the court had used in his original charge. The court stated that the first portion he had submitted to them was voluntary manslaughter. The court then proceeded to instruct the jury fully as to voluntary manslaughter under the Code, § 26-1007. The court then inquired of the jury if there was any other information that they desired on the question of voluntary manslaughter. Neither the foreman nor any member thereof made any response. The court then said, "if not, we will turn to involuntary manslaughter." The court then charged involuntary manslaughter in the commission of an unlawful act as well as manslaughter in the commission of a lawful act without due caution and circumspection. The court then inquired of the jury: "Do you get the distinction now?" The foreman answered, "Yes, sir." Error is assigned on this recharge because it is claimed that the court in its original charge submitted the principle of voluntary manslaughter as applied to mutual combat, this recharge withdrew from the jury the principle of voluntary manslaughter as applied to mutual combat. It is our opinion that the court was not obliged to charge the principle of voluntary manslaughter as applied to mutual combat in the first instance without a written request to do so, since he did charge the law of voluntary manslaughter under the general Code section. It will be discerned, when we read the original charge and the additional charge, that nothing appears incon-

sistent in that and it would further appear from the colloquy between the court and the jury, after they had requested a recharge, that the principles of law which were then giving the jury concern were fully cleared up and made plain to them by the recharge. Otherwise certainly the jury, composed of intelligent men, would have informed the judge that they were concerned about that phase of voluntary manslaughter as applied to mutual combat. While it might have been a little clearer and more explanatory of the original charge to have gone into a repetition of the law as applied to mutual combat in the recharge, we can not reach the conclusion, under the record of this case, that a failure to do so demands a reversal. We, think the original charge was painstakingly clear on all issues under the indictment and the evidence, and we cannot reach the conclusion that the error complained of here is cause for reversal. See, in this connection, *White* v. *State*, *74 Ga. App.* 634 (40 S. E. 2d, 782) ; *Lester* v. *State*, *75 Ga. App.* 42 (42 S. E. 2d, 141) ; *Wingate* v. *State*, *68 Ga. App.* 265 (22 S. E. 2d, 758). The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*